This is a possessory action wherein plaintiff seeks to be restored to the peaceable possession of a strip of land measuring three feet in width, north and south, by a depth of 144 feet east and west, coupled with a claim for damages.
The plaintiff alleges that on May 9, 1933, he purchased from the defendant, a certain strip or parcel of ground situated in Megret's portion to the Town of Abbeville, measuring 21 feet north and south and taken from the northern end of Lot 35 of the said Megret's portion to the said Town of Abbeville, by the full length of the said lot, cast and west, bounded north by Lot 34, south by remainder of Lot 35, east by Lot 43 or Megret's Portion, and west by Jefferson Street. That defendant constructed a fence in the southern portion of the said lot measuring three feet in width by a depth of the lot. He has made all of the essential allegations necessary for a possessory action as required by Code of Practice Article 49.
The defendant, in answer, admits the sale of the 21 feet by him to plaintiff, but denies all of the remainder of plaintiffs allegations, particularly denying plaintiff's possession of the strip of land south of the fence constructed by him and thereby denying any disturbance of plaintiff in his possession of the 21 feet sold and conveyed to him by the sale of May 9, 1933. In further answer, the defendant sets out that he was the owner of Lot 35, the northern boundary of which was the southern wall of a theatre building standing on Lot 34, and that when he sold plaintiff the 21 feet off of the northern portion of Lot 35, the 21 feet was to be taken from the south wall of the said building; that the fence constructed by him was on a line 21 feet away from the said theatre building, and did not encroach on plaintiff's property; that he had leased to plaintiff certain properties to the south of this line on December 5, 1933, again on May 19, 1938, for a period of 5 years from June 5, 1938, thusly ending the lease on June 5, 1943, and which leases covered the strip in question, thereby precluding plaintiff's possession under his act of sale or otherwise. Defendant further sets out that he was the owner of the tract of land from the southern wall of the theatre building by the prescriptive title of thirty years.
On these issues, the case was tried. The trial judge rendered a judgment, without written reasons, dismissing plaintiff's suit at his costs, and further rendered a judgment in favor of defendant recognizing him as the possessor of the strip of land in question, defining, limiting, restricting and interpreting the deed of May 9, 1933, so as to read as follows: "A certain parcel of land, lying and being situated in Lot No. 35 of the Megret's portion to the Town of Abbeville, Louisiana, measuring three feet in width, north and south, by the full length east and west, of Lot No. 35, the north line of said parcel of land running parallel to and lying 21 feet south of the south wall of the Dixie Theatre Building, in the Town of Abbeville, Louisiana." In other words, the trial judge found the northern line of Lot 35 to be the south wall of the Dixie Theatre and that the fence *Page 182 
constructed by the defendant was the dividing line between plaintiff's property and that of defendant, and that the property to the south thereof was that of defendant, thus not encroaching, trespassing and or otherwise on the property of plaintiff. Plaintiff has appealed.
In the beginning, let us say that it is beyond us that the judge should have rendered the latter part of his judgment. The case was only a possessory action. Throughout the trial, the plaintiff timely objected to any evidence seeking to change the action to one of boundary or to a petitory action. It appears from this latter part of the judgment that the trial judge considered the case as a joint boundary and petitory action.
Code of Practice, Article 50, states: "The disturbance which gives rise to the possessory action may be of two kinds; disturbance in fact, or disturbance in law."
Code of Practice, Article 51, states: "Disturbance in fact occurs when one, by any act, (in our case the building of a fence 3 feet in width by 144 feet in depth) prevents the possessor of a real estate, * * * from enjoying the same quietly, * * *."
Code of Practice, Article 53, provides: "The plaintiff in a possessory action needs only, in order to make out his case, to prove that he was in possession of the property in question, in the manner required by this Code, and that he has been either disturbed or evicted within the year previous to his suit. So that when the possession of the plaintiff, or the act of disturbing him is denied, no testimony shall be admitted,
except as to the fact of the possession, or as to the act of disturbance, and all testimony relative to property shall be rejected." (Italics ours.)
As previously stated, plaintiff protected himself by timely objection as against any testimony otherwise than to show his possession or lack of possession for more than a year prior to his disturbance. If he has shown such possession, since the disturbance is indirectly admitted in the answer and in the facts in the building of the fence on the strip in question, he is entitled to a judgment. What are the facts relative thereto?
Plaintiff's evidence shows, after the purchase by plaintiff from defendant in 1933, defendant having failed to set out stakes and deliver to plaintiff the 21 feet called for by the deed, plaintiff went into possession as to what he considered was the property sold him and built a brick building, the front part of which faced Jefferson Street. He owned the southern 59 feet portion of Lot 34 upon which he had a theatre. In 1936, he desired to improve the theatre building on Lot 34 by the extension of the said building to the east. In this construction, he was met by opposition of Judge Edwards, the owner of Lot 42, who contended that the building would encroach on his lot by 2 1/2 feet. In the discussion of the location of Lots 34 and 42, it was ascertained where the center peg or stake dividing the square or where the common corner of Lots 34, 35, 42, 43 was situated. The property was then surveyed by a Mr. Tanner, a qualified civil engineer, and the lines drawn showing the demarcation between Lots 34, 35, 42 and 43. From the mutual corner of these lots, an iron stake was inserted over an old stake, which was found to have been inserted as the common corner, and a cement block constructed around it. Plaintiff built and constructed a lattice fence to the south twenty-one feet, wherein another iron stake and cement block was constructed. In 1936, plaintiff constructed, on the strip in question, a storm sewer. In 1940, Tanner put down an iron post in the southwest corner of the property. In 1942 plaintiff constructed a water main on the strip in question. In 1936, electric light poles were removed, by the order of plaintiff, which tended to interfere with the free use of the 21-foot strip purchased by him from defendant.
[1] As against this, defendant testified that he consented to the building of the sewer and water lines. That plaintiff had leased, on December 5, 1933, for a period ending on July 5, 1938, a "parcel or lot of land lying and being situated in Megret's Portion of the town of Abbeville, Louisiana, measuring 32'-26" front on Jefferson St. by the full depth of the lot from Jefferson St. to the East property line, said parcel of land being taken from the extreme north end of the property of L.J. Eleazar and being bounded North by Frank DeGraauw, South by L.J. Eleazar, West by Jefferson St., and East by F.J. Richard." On May 19, 1938, defendant leased to plaintiff a "certain parcel of land, situated on Jefferson Street in the Town of Abbeville, Louisiana, starting at a point 10 feet North of the north line of the office building of L.J. Eleazar, on Jefferson *Page 183 
Street, thence running north to the north line of the lot of L.J. Eleazar, thence running cast to the property line of W.P. Edwards, thence south to the south line of the lot of L.J. Eleazar, thence west to a point 12 feet east of the office building of L.J. Eleazar, thence north to a point 10 feet north of the office building of L.J. Eleazar, thence west to the point of beginning." Defendant further testified that he considered the south wall of the theatre building as his northern boundary line prior to the sale of 21 feet to plaintiff, he owning at that time all of Lot 35, or in other words, the division line between Lot 34 and Lot 35. He offered the testimony of Mr. Val Smith, a civil engineer. Smith testified that he measured the lots on Jefferson Street beginning at the gutter on Concorde St. He allotted to the first three lots ninety feet each, and 116 feet for the fourth, regardless of the fact that the original map called for four lots of 90 feet each. He started at the present gutter, not allowing for any side walk. He found a discrepancy in the width of Concorde Street to the amount of nine feet. He did not seek to divide the block into eight lots of 90 feet each as called for by the original plat, but satisfied himself by running the frontage as called for on Jefferson St. By his survey and testimony, defendant's fence on the west side would not encroach on plaintiff and probably would encroach on plaintiff for about a foot on the east side. Defendant offered other evidence which need not be mentioned, for instance, his having had a fence demarking his northern boundary which he sold to plaintiff. It thus appears that the sole defense seems to be an attempt to show title in defendant to the strip of land in controversy in an effort to determine the exact location of the line. As previously stated, the plaintiff made timely objection to such testimony, which objection should have been sustained by the trial judge and defendant's evidence not considered.
[2, 3] The primary obligation of a vendor is that of delivery. In the case at bar, there is no evidence in the record showing that at the time of the passing or execution of deed in 1933 nor thereafter did the defendant attempt to deliver unto plaintiff the 21 feet sold him. To the contrary, it appears that plaintiff went into possession and did construction work on what he believed to have been sold to him, namely, the building of a lattice fence on the east, the construction of sewer and water drains, the installation of concrete blocks showing the corners and the building of a brick building, all prior to 1940. The constructions were open and in view of defendant, and constitute open, peaceable possession regardless of the testimony of defendant that they were done with his consent, a fact strenuously denied by plaintiff.
The defendant strenuously contended that the plaintiff rented this strip of land, being a portion of a larger strip, from the defendant in 1933 and 1938, and therefore his possession was precarious. The leases offered in evidence, the description of the property thereon leased as given supra, do not identify the property in question as forming any part thereof. The leases merely state that the property leased was bounded on the north by DeGraauw, the plaintiff. There is no dimension or measurement given fronting on Jefferson Street. The strip of land in question is bounded on the south by defendant, and the northern boundary of the defendant's property can as well be said to be this strip of land as three to four feet further north. All discrepancies in a deed translative of real estate are to be interpreted against the vendor.
[4] Plaintiff was called upon to prove that he was in actual physical and peaceable possession, as owner, of the property for more than a year prior to disturbance; that he suffered a disturbance and that he brought suit within the year in which he was disturbed. This, he has done. We are therefore bound to hold that plaintiff is entitled to judgment in his possessory action.
We next direct our attention to the claim of the plaintiff for damages.
[5, 6] It is now well settled, in a possessory action, that damages suffered by the plaintiff on account of the dispossession caused by the defendant may be recovered in the action. Williams v. Harmonson, 41 La. Ann. 702, 6 So. 604; Bodinger Realty Co., Inc., v. Tulane Investment Co., Inc., et al., 3 La. App. 261; Vidrine v. Vidrine, 14 La. App. 484, 130 So. 244; Barrow et al. v. Siracusa, La. App., 165 So. 738; Union Methodist Episcopal Chapel v. Rupp, La. App., 170 So. 508. But, of course, plaintiff must prove these damages with that reasonable degree of certainty necessary to form the basis of a judgment. Means v. Hyde, 19 La. Ann. 478; Guidry v. Matherne, La. App., 12 So.2d 19. *Page 184 
[7-10] The evidence shows that plaintiff constructed a brick building partly on the property purchased from defendant and partly on Lot #34 having a front on Jefferson Street of seventeen feet with a depth of fifty feet, with a division. The front thereof, he leased to the Railway Express Agency, and the back portion, he used to store pianos, coin operating machines, furniture and equipment. His truck would use the seven foot strip on the south of the building for a passage way to reach the rear of this store room. By the construction of the fence by defendant, plaintiff was unable to reach the rear of this store room by his truck, causing his employees to park on Jefferson Street and haul such pianos, etc., as he may have desired to remove therefrom or store therein by hand, causing a loss of time by his employees and the furnishing of extra labor by the plaintiff to his employees. The plaintiff testified that such loss of time by his employees and the extra labor furnished by him are of value in excess of $150. His demand, in his petition, is for an award of $150. We feel that he has proven this damage by a reasonable degree of certainty and should be awarded this sum. Another claim for damages is the sum of $250 for attorney's fees incurred by him. Attorney's fees are recoverable in a case like this. See cases cited supra, particularly Vidrine v. Vidrine, 14 La. App. 484, 130 So. 244. Plaintiff testified that he had an agreement with his attorney to pay him $250 for his services. The mere fact that he contracted to pay his attorney that sum does not necessarily mean that we should allow him this amount. Attorney's fees are fixed by the court for services rendered under the eyes of the court. In this case, regardless of the fact that this small strip of land could be considered of a value of not more than $150, yet to plaintiff, under the facts of the case, it had an especial value as a drive way to his storage room and therefore he was willing to pay his attorney the sum of $250. According to the services rendered by his attorney in the district court and in this court, we find an award of $250 to be reasonable. The award will be made accordingly.
[11] The other, and last, claim for damages is for the sum of $200 "for the Willful, tortious, malicious, wanton, forcible and illegal trespass upon petitioner's property rights." Without going into an extensive discussion of the evidence bearing on this claim, we state that, after a careful review of the evidence, we fail to find where plaintiff has proven, within a reasonable degree of certainty, this damage, and the same is therefore disallowed.
For these reasons, it is ordered that the judgment appealed from is annulled, reversed and set aside.
It is now ordered that there be judgment in favor of plaintiff, Frank DeGraauw, and against the defendant, Leon J. Eleazar, decreeing the plaintiff to be the possessor of the following described property, to-wit:
"A certain parcel of land located in the southern portion of the strip or parcel of land hereinabove described, measuring three feet in width, 'north and south, throughout the entire depth of said Lot between parallel lines running east and west; said land measuring 144 feet, more or less, east and west and said strip is bounded on, the north by the remaining portion of the above described conveyed property, east by Lot No. 43 of said Megret's Portion to the town of Abbeville, Vermilion parish, Louisiana, South by remaining portion of said Lot No. 35 of Megret's Portion aforesaid, and west by Jefferson Street of said town of Abbeville, Louisiana; said strip of property being a portion of the strip of land conveyed and described under Paragraph One thereof."
and decreeing that plaintiff be restored to the possession of the said property.
It is further ordered that there be judgment in favor of plaintiff, Frank DeGraauw, and against the defendant, Leon J. Eleazar, in the full and just sum of Four Hundred Dollars ($400) with legal interest from date of judicial demand until paid, and all costs of these proceedings. *Page 185