O’NIELL, Chief Justice.
 

 This is a suit for damages, for the value of timber cut and removed by the defend
 
 *25
 
 ant from a tract of land which the plaintiff claims belongs to her minor son, Edgar Lee Scoggins. The plaintiff is suing in her capacity as tutrix of the boy, whose father is dead.
 

 The plaintiff described the land from which the timber was cut and removed by the defendant, for the value of which timber she is suing, as being the S% of the NEJ4 and the Ni/á of the SEj4 and the SE}4 of the SE14 of Section 2, T. 1 N, R. 12 W. The defendant excepted to the petition on the ground that the plaintiff had no cause or right of action, and pleaded specifically, in answer to the suit, that the land in question was a part of a tract on which the plaintiff sold to the defendant all of the standing timber, on the 17th of March 1928, under the description of Lot 4 or the SEJ4 of the NWJ4 and Lot 9 or the Nj/£ of the SWj4 of Section 1, T. 1 N, R. 12 W. The defendant pleaded, in the alternative, that, if the land from which the timber was removed, for the value of which the plaintiff is suing, was not included as a part of Lots 4 and 9 of Section 1, then the plaintiff’s son had no title to the land and hence no right of action, because the description of the land in the deed by which the plaintiff sold the timber to the defendant was the same as the description by which the ancestors in title of the plaintiff’s son acquired the land by patent from the State of Louisiana. The defendant pleaded, also in the alternative, that the intention of the parties to the deed dated March 17, 1928, was to sell the timber on all of the tract of land, and that, if the description in the deed did not embrace that part of the land for which the plaintiff is claiming the value of the timber in this suit, the omission was a mutual mistake of the parties to the deed, and that the deed should be corrected or reformed so as to express truly the intention of the parties, for the purposes of this suit. After hearing the evidence the court gave judgment for $3,040 in favor of the plaintiff, as tutrix of her son. The defendant is appealing from the judgment.
 

 The plaintiff’s son acquired title by inheritance from his father, whose title emanated from two state patents, neither of which described any land as being in Section 2. The first of the two patents was. issued to Thomas F. Gray on March 23, 1861, and, as amended on the 28th of February 1928, described the land as the SEJ4 of NWj4, or Lot 4, and the SW}4 of NE14, Section 1, T. 1 N, R. 12 W. The SWJ4 of SE14 of Section 1 is Lot 5 of that Section, is immediately east of Lot 4, and is not involved in this suit. The other patent was issued to A. L. Scoggins on November 7, 1898, and described the land thereby conveyed as Lots 9 and 10 or Frl. NEJ4 of SWJ4 and Frl. SW|4 of SEi/j of Section 1, T. 1 N, R. 12 W. Lot 10, which, is on the south side of Lot 9, is not involved in this suit. The important fact here is-that neither of the patents from which the title of the plaintiff’s son emanates.
 
 *26
 
 describes any land as being in Section 2. Section 1, being in place, is of course in the northeast corner of the township, and, if there ever was a section designated as Section 2, in place, it would adjoin Section 1 on its west side. But the United States survey of Section 1, made in 1884 and platted in 1885, shows that the section was only a fractional section, having an area of 567.59 acres, bounded on the west by the Sabine River, which is the dividing line between Louisiana and Texas. The government plat shows also that Lot 4 of Section 1 had an area of 109.81 acres, consisting of the fractional S% of the NWV4 of the section, extending westward to the Sabine River. The plat shows also that Lot 9 of Section 1 had an area of 48.91 acres, consisting of the fractional N% of the SWj4 of the section, and extending westward to the river. The plat shows also that there was no such government subdivision as Section 2. In fact there was not enough room between Section 1 and the river, as it was located on the official government map, to justify the creating of another section to be numbered 2. In recent years it has developed that the location of the Sabine River on the official plat made in 1885 does not conform with the location of the river as it actually exists today. There is some doubt as to whether the change in the location of the river was caused by the gradual changing of its course or was the result of an error made by the compilers of the government map in 1885 from the surveyor’s field notes made in 1884. Whatever may have been the cause of the change in the location of the river on the map, it seems to have been the cause of this litigation. Locating the river as the surveyors locate it now causes Lot 4 of Section 1 to lose 51 acres, and causes Lot 9 of that section to gain 55 acres. And this change in the location of the river has extended the land on the Louisiana side so far westward as to have induced some surveyor or surveyors to place an imaginary section line between Section 1 and the supposed Section 2. That change in the location of the river seems to be the only justification for assuming that there ever was a government subdivision designated as Section 2 in that township.
 

 The decisive point in this case is in the defendant’s exception of no right of action; that is to say, the plea that, if the land described in the plaintiff’s petition, as being in Section 2, is not included in the description in the deed by which the plaintiff sold the timber to the defendant on March 17, 1928, it follows necessarily that her son has no title to any land in Section 2, and hence no right of action.
 

 The two patents on which the title of the plaintiff’s son depends describe Lots 4 and 9 of Section 1, which lots extend westward to the river; but the patents do not describe any land as being in the supposed Section 2. In the deed by which the plaintiff sold the timber to the lumber company, the land is described as Lots 4 and' 9 of Section 1, and the map attached to the
 
 *27
 
 abstract of title which she furnished to the defendant while negotiating for the sale of the timber shows that Lots 4 and 9 extended westward to the river, and shows that there was no such section as Section 2.
 

 The evidence that the plaintiff in this case intended to sell to the lumber company — and that the company intended to buy — the timber on
 
 all
 
 of the tract of land owned by her son is conclusive. In the first place, that intention is disclosed by the map attached to the abstract of title which the plaintiff furnished to the defendant while negotiating for the sale of the timber, which map is a copy of the government map of Section 1, made in 1885, and which shows that Lots 4 and 9 of Section 1 extended westward to the river, and that there was no such section as Section 2 in that township. In the second place, in a series of five letters written by the plaintiff to the lumber company between September 1935 and January 1937, the plaintiff endeavored to have the company convey to her lands in Texas in exchange for the tract of land belonging to her son, on which the defendant owned the timber; and in these letters she acknowledged the defendant’s ownership of the timber on the land, without any reservation. In the third place no reason has been or can be suggested as to why the defendant would have been willing to buy the timber on
 
 only a part
 
 of this comparatively small tract of land belonging to the plaintiff’s son. In the plaintiff’s letters to the defendant, she refers to the tract of land as having an area of 147 acres, but the government map, made in 1885, shows that the exact area was 158.72 acres. And the testimony shows that the area in dispute is approximately 57 acres. It is unreasonable to believe that the lumber company would have been willing to buy the timber on all but 57 acres of the land, knowing that any logging equipment that would have to be installed would suffice to log the whole tract.
 

 The plaintiff argues that in a suit of this nature the defendant cannot question the plaintiff’s title, and cites the following decisions as authority: Kernion v. Guenon, 1828, 7 Mart., N.S. 171, 172; Bonis v. James, 1844, 7 Rob. 149; Mott v. Hopper, 1906, 116 La. 629, 40 So. 921; Collins v. Dalton Clark Stave Co., 1911, 128 La. 250, 54 So. 788; Smith v. Grant Timber & Mfg. Co., 1912, 130 La. 471, 58 So. 153; Akers v. Iberia Cypress Co., 1912, 131 La. 833, 60 So. 363; Gould v. Bebee, 1913, 134 La. 123, 63 So. 848. That rule applies, only to cases where the plaintiff is in possession of the land on which the defendant has trespassed. In such cases the action for trespass is in the nature of a possessory action and is governed by Article 53 of the Code of Practice, which provides that in a possessory action the defendant cannot contest the plaintiff’s title. Bub the rule has no^ application to a case like this, where the plaintiff is not in actual possession of the land and is suing merely for damages for timber cut and removed
 
 *28
 
 from the land. In such a case the plaintiff cannot by merely charging the defendant with being a trespasser deprive him of the right to question the plaintiff’s title. Smith v. Grant Timber & Mfg. Co., supra; Akers v. Iberia Cypress Co., supra.
 

 As to the acreage in dispute the plaintiff pleads the prescription of 10 and 30 years acquirendi causa, founded upon possession which was held by her son’s father and grandfather; but, if the acreage in dispute is not included in the description given in the two patents on which the title of the plaintiff’s son depends, the title to that acreage must remain in the State or the public domain; and it goes without saying that no one can acquire by prescription title to land belonging to the State or the public domain.
 

 The plaintiff avers also in her petition that a part of the land in dispute was accretion formed in the bend of the Sabine River. However the evidence shows that the accretion was of very small area and that no timber was cut on that part of the land. Besides, in the plaintiff’s sale of the timber to the lumber company, she made no reservation of any part of the land that might have resulted from accretion. In fact, as we have said, the map attached to the abstract of title which the plaintiff furnished to the lumber company during the negotiations for the sale of the timber showed that the land extended to the edge of the river.
 

 The judgment appealed from is annulled, and the plaintiff’s demands are rejected and her suit is dismissed at her cost.