81 So.2d 124 (1955)
Mrs. Lizzie Dykes KNOTT, Plaintiff-Appellee,
v.
David LITTON and Mary Tyler Litton, Defendants-Appellants.
No. 8328.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1955.
Rehearing Denied July 8, 1955.
Writ of Certiorari Denied October 4, 1955.
*125 Pickett & Pickett, Many, for appellants.
Godfrey & Edwards, Many, for appellee.
AYRES, Judge.
Plaintiff instituted this action against defendants, husband and wife, for damages for physical and mental injuries, pain and suffering and for permanent disability from aggravation of pre-existing physical infirmities as the result of an alleged aggravated battery committed upon her by Mrs. Mary Tyler Litton, which attack was allegedly induced, encouraged and incited by defendant David Litton, who is head and master of the community of acquets and gains existing between defendants and of which at the time Mrs. Litton was acting as agent.
As the result of the wounds and beating, plaintiff allegedly suffered excruciating pain and mental anguish, concussion of the brain, large and painful bruised, contused and blood shot welts about the head and body, legs and arms, immediate shock and later an alarming tension and elevation of blood pressure and a state of acute anxiety and fear, which injuries have caused and produced extreme nervousness and anxiety, headaches, aggravation of a pre-existing arthritic condition of the back, general soreness about the head and body and a general aggravation of her condition of poor health, for all of which she sought reimbursement for medical expenses and hospital bills in the sum of $112, for future medical and professional care, $1,000, for pain and suffering, past present and future, $10,000, and for permanent disability resulting from aggravation of pre-existing conditions, $5,000.
After filing and urging exceptions of no cause or right of action, which were referred to the merits, defendants answered, generally denying plaintiff's allegations, Mrs. Litton specifically alleging "that the difficulty in which plaintiff alleges she was injured was provoked by her; that at the time and place of the alleged difficulty, plaintiff without warning, or provocation, viciously attacked respondent with a large stick and struck her over the head and shoulders with same; and that the actions of respondent in striking plaintiff were in self defense and in an effort to prevent further injury to her person by plaintiff who provoked the difficulty."
Trial was had as to the defendant, David Litton, only. Due to illness a continuance *126 was granted as to Mrs. Litton. Reservation was made to take her testimony at a later date, which, however, was never taken due, as we are informed in brief by her counsel, to an indictment filed against her, resulting from the difficulty constituting the basis of this action, after which her husband elected not to use her as a witness.
From a judgment in plaintiff's favor for $3,128, representing the accrued medical and hospital expenses and $3,000 for pain and suffering and permanent disability, including mental and emotional depression, defendant appealed.
The record discloses for consideration the following material and pertinent facts: Plaintiff, a widow approximately 66 years of age, of small, frail stature and in poor physical health, owned and lived alone at her residence situated on 40 acres in the Blue Ridge Church community of Sabine Parish, Louisiana. This acreage was used as a field or pasture for her cow, the enclosures of which had been permitted to somewhat deteriorate and the fence "row" to grow up in bushes. On occasions portions of defendants' herd of cattle would gain entrance to plaintiff's premises, whereupon her own dog and two of her neighbor's dogs were sicked upon the cattle to drive them away. The two dogs were owned by Mr. and Mrs. Will Allen, who lived nearby and on property adjacent to plaintiff's pasture. On the occasion of the incident involved, defendants' cattle gained entrance to plaintiff's premises through a gate near the Allen residence, whereupon Mrs. Allen caused the dogs to chase the cattle. Plaintiff opened her yard gate, through which she attempted to drive the cattle and eventually through the yard to the outside range, when defendant, David Litton, arrived. Mrs. Knott asked his assistance in driving the cattle, but he, instead propped his foot on the fence and proceeded to "bawl" her out and threaten to kill her dog. Litton was angry and left in a huff, and, after getting in his truck, met Dave Moody, who testified that Litton was mad and told him that if Mrs. Knott were a man, or if he were a woman, he would whip her. Litton proceeded to his residence and returned within a few minutes with his wife. They met Will Allen shortly after reaching the Allen residence, and while Allen and Litton were engaged in conversation, discussing plaintiff, her pasture fence, defendants' cattle and the dogs, Mrs. Litton kept repeating "I am going to whip that woman." Defendant parked his truck near the Allen residence, whereupon Mrs. Litton alighted therefrom, picked up a green sweet gum sprout about an inch in diameter at the butt and a few feet long, stripped the foliage and branches therefrom, and proceeded, by crawling through the fence out in the pasture, towards Mrs. Knott, who was on her way to the Allen residence. On meeting plaintiff, and after using rude and violent language, Mrs. Litton began to beat plaintiff with the stick over her head, back, legs and arms until she was in a manner beaten down. Her cries and calls for help were heard as far as threequarters of a mile away by a neighbor, Mrs. John Sandefur, who proceeded to answer the call. Mrs. Allen and her daughter, Mrs. Weems, at the Allen residence were in plain view and hearing distance of the occurrence and on hearing Mrs. Knott's cries and calls for help, were menacingly admonished by the defendant, David Litton, not to go to Mrs. Knott's assistance but to leave them alone. Notwithstanding this admonition but after some hesitation they proceeded and reached the scene, whereupon Mrs. Litton ceased beating plaintiff. The stick had broken into three pieces and Mrs. Litton had the small end of the butt segment in her hand, with which she had been beating plaintiff. Defendant Dave Litton arrived at the scene, took his wife by the arm and told her to come along as she had done enough. Mrs. Allen assisted plaintiff by lifting and supporting her to a standing position, after which plaintiff was carried to the Allen residence and later that afternoon to a clinic, where she remained for five days, and then was confined to bed at her sister's home for an additional week.
In the aforesaid conversation with Moody, defendant Litton contended that plaintiff had been dogging his cattle and *127 driving them out of her pasture and stated that he was going to run his cattle on the outside around there regardless.
The conclusion is inescapable that Litton became inflamed with anger during his conversation with Mrs. Knott, following which he went home and got his wife for the precise purpose of doing just what she did. At the time the attack was made upon her, plaintiff had committed no overt act towards Mrs. Litton nor did she in any manner provoke the attack by word or action. She was not armed with any instrument of any kind or character and was practically helpless and defenseless when attacked by a much younger, stronger and more robust woman, aged in her 30's and weighing between 160 and 170 pounds. There is no question but what the attack was wilful and malicious and wholly unprovoked and, under the circumstances, most brutal. Neither is there any question but what David Litton wilfully and maliciously incited, encouraged and induced his wife to attack plaintiff. This defendant's liability is not affected by the relationship of husband and wife. The general principle of LSA-C.C. art 2315 that
"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it",
is well known and uniformly applied. Defendant has clearly brought himself under the provisions of LSA-C.C. art. 2324, which provides:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
Under this article, one who causes another to commit a tort or who assists or encourages him in the commission of a tort is himself a "tort feasor" and is liable, in solido, with the one actually committing the tort. Cust v. Item Co., Limited, 200 La. 515, 8 So.2d 361; Wallace v. Miller, 15 La.Ann. 449; Irwin v. Scribner, 15 La.Ann. 583.
The defendant, David Litton, being clearly liable for the reasons aforesaid, there need be no further discussion of his liability as head and master of the community of acquêts and gains existing between him and his wife, and of which it is contended that Mrs. Litton, in administering the beating to Mrs. Knott, was acting as agent.
Plaintiff has answered defendants' appeal, praying that the award be increased. Defendants contend that the award was excessive and should be reduced.
On the afternoon of this occurrence, plaintiff was admitted about 4:30 P.M. to the hospital and clinic of Dr. H. M. Prothro in the town of Pleasant Hill, who, upon examination, found plaintiff's blood pressure was 180 over 90, whose usual blood pressure was on the low side of 110 over 70, with a temperature of 100 degrees and complaining of pain, especially of her head. The doctor stated that she had a large hematoma on the back part of her skull and multiple bruises over her back, arms, thighs, buttocks and calves, which were blue in nature and covered a wide area. X-rays were made of her head and of her pelvis, which were negative as to fractures but which, from the nature and extent of the injuries, the doctor felt justified in making. During the course of her hospitalization of five days, she carried fever and suffered pain for which sedatives were given for relief. She was also given penicillin and streptomycin. The doctor's estimate was that plaintiff would recover from the immediate effects of the injuries received within six to eight weeks. After leaving the hospital, Dr. Prothro did not see her any more as she was later treated by Dr. O. L. Sanders, her family physician. Dr. Sanders, who had known plaintiff all his life and who had been her family physician for some four or five years, examined plaintiff on April 8, 1954, and found soreness of the scalp and multiple bruises over her body which were painful and sore. *128 The hematoma on the back of her head was still present, which was shown by the testimony of lay witnesses soon after the incident to have been the size of a fist. It was the doctor's opinion that from the nature of the wounds inflicted they were sufficient to and did produce a concussion of the brain.
After the death of her husband in 1952, plaintiff was in a depressed state and in instances such as this, her condition was accentuated and became worse. This was attributed to the assault and battery. As to the contused area, the doctor testified of finding six to eight of such areas or welts, measuring several inches in length by half an inch in width, scattered over the body, but after refreshing his memory from a report previously made by him, stated there were ten to fifteen of such areas, in length from six to twelve inches from two to three inches in width, which he explained to be the greatest or maximum extent to which he found any of those areas. The doctor expressed an opinion that the aforesaid injuries probably aggravated plaintiff's arthritis. The chief after-effects apparently pertain to the depressed anxiety or emotional state. She has become obsessed with fear, as a result of which her sleep is disturbed; she sleeps with the doors and windows to her residence closed, even during the hot summer months, and she has developed a fear of staying by herself as was formerly her custom. She is now beset with fear and dread of possible injury or harm. However, while there appears not to be a great deal of residual disability, yet there is some in connection with the aggravation of the arthritic condition and to the mental and depressed state of fear and anxiety, the extent and duration of which is problematical, but nevertheless the existence of which should be taken into account and considered in making an award of damages. Wherefore, we conclude for these reasons and on account of the non-allowance for future medical expense that the award should be increased. Dr. Sanders testified that previously plaintiff consulted him on an average of once per month and that since she was beaten her calls had been more frequent and from two to three times per week. We think the award should be increased by $1,000.
For the reasons assigned, the judgment appealed is amended by increasing the award to $4,128 and, as thus amended, is affirmed at appellant's cost.
Amended and affirmed.