113 So.2d 95 (1959)
Paul W. LOEBLICH et al., Plaintiffs-Appellees,
v.
Wade GARNIER, Defendant-Appellant.
No. 4772.
Court of Appeal of Louisiana, First Circuit.
March 23, 1959.
On Rehearing June 30, 1959.
*97 Reid & Macy, Hammond, for appellant.
Palmer & Palmer, Amite, for appellees.
*98 Before LOTTINGER, TATE, and FRUGE, JJ.
TATE, Judge.
In January of 1957 the Pelican State Field Trial Association held its annual event over lands approximately six miles northeast of Amite in Tangipahoa Parish. Plaintiffs are the owner and tenant respectively of an 100-acre tract of cutover land in the vicinity bounded on north and west by lands owned by defendant Garnier, who the testimony shows to be a leading spirit and organizer of the association's annual field trials. The substance of the plaintiffs' complaint is that the defendant Garnier, in his zeal to organize and produce this sports event, committed and encouraged several deliberate and serious trespasses across and upon the land of the plaintiffs, despite previous warnings through plaintiffs and their attorney not to do so.
Defendant appeals from judgment assessing damages caused by such trespasses and enjoining defendant from committing further unlawful intrusions upon the land of the plaintiffs.
We will discuss the specifications of error of which defendant complains in the order they are raised in his brief.

I.
The first specified error urged is that the trial court incorrectly held that in this trespass suit only plaintiffs' possession and not plaintiffs' title is at issue and that it therefore was in error in refusing to order pursuant to defendant's reconventional demand a judicial survey of the properties in order to establish the correct or ideal boundary (according to which, defendant avers,[1] the alleged trespasses did not take place on plaintiffs' property).
This is, however, a suit for damages arising from the disturbance of plaintiffs' open and peaceable possession of the tract enclosed by their fences. It is well settled that, even against the lawful owner, one who has been in possession of property for over one year has a cause of action to prevent an illegal disturbance of that possession and to recover damages resulting from such disturbance, and that, consequently in such actions title is not at issue when (as here) timely objections is made by plaintiffs to evidence concerning title. Esmele v. Violet Trapping Co., 184 La. 491, 166 So. 477, and the many cases cited therein; see, also, Grant Timber & Mfg. Co. v. Gray, 131 La. 865, 60 So. 374, affirmed 236 U.S. 133, 35 S.Ct. 279, 59 L. Ed. 501; cf., LSA-C.C. Arts. 3450, 3454, 3455; Code of Practice Art. 53. Such a possessor may protect his possession by injunction, even against the owner. C.P. Art. 298(5); Churchill Farms, Inc. v. Gaudet, 184 La. 984, 168 So. 123. Likewise, in such actions by possessors, the trespasser may not excuse his violation of an apparent and generally recognized boundary by attempting to establish another and theoretically correct boundary. Hill v. Richey, 221 La. 402, 59 So.2d 434; Wright v. Holder, La.App. 2 Cir., 72 So.2d 529, certiorari denied; DeGraauw v. Eleazar, La.App. 1 Cir., 24 So.2d 180; Guidry v. Matherne, La.App. 1 Cir., 12 So. 2d 19."
In urging that the trial court erred in holding that title was not at issue, defendant relies upon several decisions involving actions for trespass by *99 cutting timber in which it was held that, when the defendant claims ownership of the land upon which he cut the timber, the plaintiff must prove a title superior to that of the defendant. Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Pope v. Daniel, La.App. 1 Cir., 195 So. 59; Walker v. Baer-Thayer Hardwood Co., 1 Cir., 14 La.App. 381, 126 So. 541; Johnson v. Sylvester, 1 Cir., 5 La.App. 720.
But in these cases the plaintiffs claimed damages as owners and not as possessors and, so far as the opinions show, were not in possession of the property upon which the alleged trespasses took place. These cases do not, as urged, constitute an exception to the general rule that in actions for damages and/or injunction arising from a disturbance of possession, the question of title is not involved and cannot be set up by the defendant to justify an unlawful disturbance of plaintiff's possession. Cf., Foshee v. Kirby Lumber Corp., 212 La. 44, 31 So.2d 419; Triche v. Brownell-Drews Lumber Co., Ltd., 174 La. 512, 141 So. 44; Wyatt Lumber Co. v. Arnold, La.App. 2 Cir., 85 So.2d 287.
The trial court therefore correctly sustained plaintiffs' objections to any evidence enlarging the issues so as to present the question of title, and it also committed no error by denying defendant's reconventional demand that a judicial survey be ordered to establish the ideal boundary between plaintiffs' and defendant's tracts.

II.
Defendant's second specification of error is that the trial court incorrectly allowed damages to the plaintiffs since they, allegedly, had by stipulation converted this action into one purely for injunctive relief. We find no merit to this contention.
Initially, pointing out that the prayer requested inter alia a restoration of possession to plaintiffs, defendant had filed exceptions of misjoinder of parties plaintiff, of improper cumulation of causes of action, and of no right and/or cause of action. These were all directed at the joinder of the property's tenant as co-plaintiff, defendant alleging that under Article 48, C. P., those who possess in the name of another, such as tenants, are not entitled to bring possessory actions.[2]
When the exceptions were set for trial, the plaintiffs' attorney "stated that he is bringing this action as a trespass action under Code of Practice 298 subsection 5, and any relief under possessitary [sic] action is abandoned" (minute entry, March 22, 1957).
It is apparent from the context that the sole intent of the minute entry was to specify that the present suit was not a codal possessory action under C.P. Arts. 46-59, but instead an action for trespass. Under C.P. Art. 298(5), the court must upon application issue an injunction against disturbance by others to anyone claiming "either the ownership, the possession or the enjoyment" of immovable property who has been in possession thereof for longer than one year. Such actions although similar in many respects are not bound by the technical rules of the codal possessory action, Churchill Farms, Inc. v. Gaudet, 184 La. 984, 168 So. 123, and therein the claim for injunctive relief is commonly coupled with a prayer for damages, Riseman, "The Possessory Action in Louisiana", 20 Tul.L.Rev. 524 (1946) at 525, footnote 7.
*100 That there was never any actual or presumed intent by plaintiffs to waive their claim for damages, and that the stipulation was not intended to limit the claim for injunctive relief solely to that specified by C.P. Art. 298(5), is made plain by the trial court's discussion (Tr. 2-5) of the inartistic entry by the minute clerk.

III.
Defendant's third contention is that plaintiff Loeblich through himself or his tenant was not in actual and physical possession of the property for more than a year so as to be entitled to the injunctive and other relief afforded by the trial court.
At this point, before discussing such contention, it should be noted that defendant does not attempt to distinguish the possession or remedy of the co-plaintiff tenant from those of the plaintiff landlord, possibly because "the possession of the lessee being the possession of the lessor, the disturbance of the one is necessarily the disturbance of the other", Bright v. Bell, 113 La. 1078, at page 1090, 37 So. 976, at page 980, and because "One who is in physical possession of a tract of land under a lease which gives him the exclusive right to possess it for lawful purposes may protect his possession against a trespasser by an injunction and may recover damages [cases cited]", Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229, at pages 231-232 (which holding upon the exception of no cause and/or right of action was not disturbed upon rehearing). For purposes of this opinion, no differentiation therefore will be made as to the position of the two parties plaintiff.
C.P. Art. 298 provides that an "injunction must be granted, and directed against the defendant himself * * *. 5. When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year * * *." (Italics ours.) All parties concede that the possession upon which such mandatory injunction suit must be based is the same as that provided as essential for a possessory action under C.P. Art. 49(1), "[a] real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient." (Italics ours.) Lee v. Harris, 209 La. 730, 25 So.2d 448; Wright v. Holder, La.App. 2 Cir., 72 So. 2d 529; cf., Foshee v. Kirby Lumber Corp., 212 La. 44, 31 So.2d 419.
For purposes of showing the nature and extent of his possession (cf. Case v. Jeanerette Lumber & Shingle Co., La.App. 1 Cir., 79 So.2d 650), plaintiff Loeblich introduced the deed by which he acquired the tract from Lewis Sandifer on November 24, 1951; the deed by which Sandifer acquired said tract from William Lamb on June 15, 1951; and the deed by which Lamb had acquired said tract from the Stern estate on February 15, 1951. Also introduced was the lease of the property for a term of five years granted on January 1, 1956, by plaintiff Loeblich to his co-plaintiff Spring for the latter's use as "a pasture for the grazing of cattle", in return for which the tenant agrees as sole rental "to erect a three-strand barbed wire fence completely enclosing said tract of land."
A fence pursuant to this lease was not built until March, 1956.
The crux of the defendant's aforesaid third specification of error is his contention that plaintiff Loeblich did not have the requisite possession of the property for more than one year because he did not take corporeal detention of the property until his tenant erected the fence in March, 1956, whereas the trespasses for which this was filed occurred in January 1957.
The codal requirement of a real and actual possession for a year preceding the trespass has since Ellis v. Prevost, 1839, 13 La. 230 and (second opinion) 1841, 19 La. 251, been understood to bar suits based upon civil and constructive possession not preceded by corporeal, physical possession *101 by the plaintiff or his predecessors in title; but not to constitute a requirement that the plaintiff himself, when claiming under a color of title, be in actual physical possession of the property at the instant of or for one year preceding the disturbance of his possession, providing his civil possession was commenced by a real and actual possession exercised over the property by the plaintiff or his predecessors in title more than a year before the trespass. Hill v. Richey, 221 La. 402, 59 So.2d 434; Rhodes v. Collier, 215 La. 754, 41 So.2d 669; Lee v. Harris, 209 La. 730, 25 So.2d 448.
Corporeal possession over the property was exercised by Sandifer, plaintiff Loeblich's predecessor in title, when in 1951 (after a survey verified the recognized boundaries of the tract) he cut all the timber off the tract he owned[3] up to clearly recognizable limits; thus evidencing such external signs of possession as to indicate clearly his exclusive control and occupancy over the property. Jacobs v. Southern Advance Bag & Paper Co., 228 La. 462, 82 So.2d 765; Veltin v. Haas, 207 La. 650, 21 So.2d 862; Hebert v. Chargois, La.App. 1 Cir., 106 So.2d 15; Case v. Jeanerette Lumber & Shingle Co., La.App. 1 Cir., 79 So.2d 650. All witnesses agree that plaintiffs' tract was entirely cutover land, its limits clearly distinguishable from the adjacent heavily timbered tracts. (This latter land north and west of plaintiffs' property had been owned by Garnier for several years prior to Sandifer's extensive timber operations, and Garnier has resided since 1954 on his own property in the immediate neighborhood.)
The initial corporeal possession exercised by Sandifer in 1951 was continued by the uninterrupted civil possession of Sandifer and those succeeding him in title, LSA-C.C. Arts. 3429, 3442-3444, and enures to the benefit of the plaintiff his vendee, LSA-C.C. Arts. 3493-3495. Lee v. Harris, 209 La. 730, 25 So.2d 448; Annison v. Womack, La.App. 1 Cir., 200 So. 663. Further, the circumstance that Sandifer did not himself exercise real and actual possession for a full year is immaterial, since the initial corporeal possession preceding the civil possession need not be for any particular length of time. Industrial Lumber Co. v. Farque, 162 La. 793, 111 So. 166. The limits of such continued possession were clearly indicated by the obvious line of demarcation between the plaintiffs' cutover land and the defendant's heavily timbered tracts. Hill v. Richey, 221 La. 402, 59 So.2d 434; Wright v. Holder, La.App. 2 Cir., 72 So.2d 529, certiorari denied.
Plaintiffs' possession up to such manifest limits along which his fence was built nine months before the trespasses thusinitiated as it was by the corporeal detention of the land by his author in title some five years before, followed by uninterrupted civil possession prior to his own physical enclosure of the land by fencessatisfied the statutory requirements of C.P. Art. 298 (5).
Having come to the conclusion that real and actual possession for more than one year was shown so as to justify the mandatory injunctive relief provided by the cited codal article, we do not reach consideration of the suggestion of the trial court that a discretionaryas differentiated from the mandatory codal injunction (cf. Brunning v. City of New Orleans, 152 La. 989, 94 So. 909)might nevertheless issue to protect a lawful and peaceful possession against forcible trespasses, and damages be assessed for such unlawful disturbances *102 thereof as in the case of any other wrongful act (cf. Art. 2315, Gliptis v. Fifteen Oil Co., 204 La. 896, 16 So.2d 471; Harrison v. Petroleum Surveys, La.App. 1 Cir., 80 So. 2d 153), irrespective of the tenure of the possession. See Wells v. Wells, 8 Mart., N.S., 307; Bailey v. Taylor, 8 Mart., N.S., 124.

IV.
The fourth specification of error by defendant is based upon a contention that plaintiffs did not prove that the defendant himself had committed the acts of trespass for which suit was brought.
The evidence shows that defendant himself admitted placing gates in plaintiffs' fence without their consent; that in connection with the field trials, parties of horsemen and a tractor had several times crossed plaintiffs' land despite a prior warning from the co-plaintiff tenant not to do so and had cut or taken down the fence in approximately five places (for instance, cutting or removing a section of the fence upon finding a gate plaintiff had locked to prevent the trespass, in order to proceed across the plaintiffs' tract).
Although it is not shown that defendant himself performed these acts, or that the colored servant with the field trial party who did the actual cutting was employed by defendant, the record amply demonstrates that the latter as secretary of the field trials was in active charge of the preparations and conduct thereof. Indeed, prior to the trespasses, he informed the co-plaintiff tenant and his attorney that he did not intend to respect the fences enclosing the property.
LSA-C.C. Art. 2324 provides: "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act." As stated at 87 C.J.S. Trespass § 31, at page 987: "The person authorizing the doing of an act of trespass by another, or ordering the doing of a trespass, or advising it, encouraging, procuring, or inciting it, is liable and the defendant need not be present in order to be liable." We think the record fully shows that the defendant Garnier actively encouraged and incited (if not directed) the trespasses and was properly held liable for them. Rush v. Town of Farmerville, 156 La. 857, 101 So. 243; Knott v. Litton, La.App. 2 Cir., 81 So. 2d 124, certiorari denied.

V.
For his fifth specification of error defendant contends that the damages awarded by the trial court were either not proved or else are not legally allowable.
A detailed estimate showing the cost of repairing the fence to be $116 was the basis of the trial court's award for fence damages to that amount. Defendant argues that evidence of the estimated cost of repairs is conjectural and should not have been accepted as proving the loss. However, "estimates can properly prove damages recoverable, even though the repairs have not been made [cases cited]", Hughes v. Louisiana Power & Light Co., La.App. 1 Cir., 94 So.2d 532, at page 536.
A more serious question is presented by the trial court's allowance of what are denoted in its opinion and in the briefs of the attorneys as "exemplary damages": $300 for invasion of plaintiffs' inherent property rights; $250 for their mental anguish, humiliation, and embarassment resulting from defendant's trespasses; and $100 attorney's fee.
At the time this case was argued, we believed that the effect of a recent Supreme Court decision was to rule that the owner or possessor could not obtain attorney's fees nor damages other than for actual property loss resulting from an unlawful trespass upon his land. Breaux v. Simon, 235 La. 453, 104 So.2d 168.
However, on January 12, 1959, the Supreme Court denied an application for writs of certiorari and review in Loe v. Whitman, La.App., 107 So.2d 536 (Supreme *103 Court Docket No. 44,421). In that decision involving a forcible and wrongful trespass on plaintiff's property despite his prior protest, our brethren of the Second Circuit awarded the sum of $250 for the disturbance and annoyance to plaintiff's possession (although there was no showing of monetary loss sustained by plaintiff) and an additional $250 for the attorney's fees. Denial of writs as to this decision is particularly significant because the right of plaintiffs to this type of damages was seriously contested and mention was made as to the conflict in Supreme Court decisions concerning the award of attorneys' fees as damages.
Because of the doubts thereby engendered as to the correctness of our original interpretation of the Breaux case, supra cit. (which was incorporated in our initial decision on the merits therein upon its remand to this court, Breaux v. Simon, La.App., 112 So.2d 121), we have undertaken a thorough review of the applicable jurisprudence and have as a result concluded that the holding of our high court in the Breaux case was not that damages such as those here sought are never allowable, but simply that the record in that case did not reflect any basis for such award therein to an amount sufficient to confer appellate jurisdiction.
a. "Exemplary" Damages.
The technical distinction as to the two types of damages is set forth in Black's Law Dictionary (3d Ed., 1933) "Damages" as follows, p. 501: "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more * * *. Exemplary damages are damages on an increased scale, awarded to the plaintiff over and above what will barely compensate him for his property loss, where the wrong done to him was aggravated by circumstances of violence, oppression, malice, fraud, or wanton and wicked conduct on the part of the defendant, and are intended to solace the plaintiff for mental anguish, laceration of his feelings, shame, degradation, or other aggravations of the original wrong, or else to punish the defendant for his evil behaviour or to make an example of him for which reason they are also called `punitive' or `punitory' damages * * *".
The often found general statement that only compensatory and not punitive damages are awardable in Louisiana[4] is in apparent conflict with the awards often made for damages for mental anguish and embarassment caused by an illegal and deliberate violation of property rights or for such violation itself irrespective of any pecuniary damage caused thereby (which damages, according to the definition above cited, are regarded in other states as exemplary or punitive damages). The key to resolution of this conflict seems to be that in such circumstances such awards in Louisiana are regarded as compensatory for violations of a recognized property right, rather than punitory.
Thus, in awarding damages for "mental anguish" caused by the continuous emission of smoke and soot onto and into plaintiffs' houses, the Supreme Court stated in McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21, at page 24: "[I]t is now well settled that damages for mental anguish or suffering are actual rather than exemplary or punitory. * * * And that actual damages resulting from a wrongful act are not limited to the pecuniary loss sustained thereby * * *. We see no reason why damages for mental anguish and suffering *104 can not be recovered in addition to property damage." And cf., 87 C.J.S. Trespass § 117, p. 1072: "Every trespass on real property is considered to result in legal injury, entitling the plaintiff at least to nominal damages * * *".
The most recent award for such damages in the case of a wrongful trespass is found in Loe v. Whitman, above cited, in which the Supreme Court denied writs of review. In Grandeson v. International Harvester Credit Corp., 223 La. 504, 505, 66 So.2d 317, the sum of $150 was awarded, in addition to property damage, for the embarassment, humiliation, and mental anguish caused by a trespass and illegal removal of a refrigerator from the home. A line of earlier cases in support of its ruling is cited by Oglesby v. Town of Winnfield, La.App. 2 Cir., 27 So.2d 137, which awarded damages for the disappointment, mortification, and mental anguish caused by the unauthorized and prior-protested trimming of branches of a tree on plaintiff's property.
A forceful example of an award in the case of a willful, illegal, and physical trespass upon the plaintiff's land is found in Bright v. Bell, 113 La. 1078, 37 So. 976. There an unsightly hedge within and along plaintiff's boundary was destroyed by some road commissioners despite plaintiff's remonstrance. The Supreme Court (increasing a lower court judgment of $1) awarded plaintiff $1,000 exemplary damages "for the invasion of his rights and the injury to his feelings", 113 La. 1090, 37 So. 980, even though no intrinsic value of the hedge was shown by the record and though the removal of the hedge resulted in a benefit to plaintiff's property as well as to the surrounding neighborhood.
Other willful and forcible trespass cases making similar types of awards are: Nickerson v. Allen Bros. & Wadley, Ltd., 110 La. 194, 34 So. 410 (excess of $840 judgment over $686.25 actual pecuniary loss awarded as "punitory damages"); Nicol v. Illinois Cent. R. Co., 44 La.Ann. 816, 11 So. 34 (award included $200 "punitory damages"); Williams v. Harmanson, 41 La.Ann. 702, 6 So. 604 ($500 awarded as damages for "unlawful eviction" including attorneys' fees of unspecified amount); Cooper v. Cappel, 29 La.Ann. 213 ($1,000 damages awarded, including $350 for removal of cotton bales, and the remainder for "injury to the feelings of plaintiffs, and attorney's fees").
See also such similar types of awards as are found in Humphreys v. Bennett Oil Corp., 195 La. 531, 197 So. 222 ($6,000 awarded for mental anguish suffered from desecration of graves in country cemetery); Dodd v. Glen Rose Gasoline Co., 194 La. 1, 193 So. 349, 353 ($1,500 awarded for "the impairment of the enjoyment by petitioners of their home" for improper disposal of waste gases from adjoining gasoline plant); and Walker v. J. J. Ellis Lake Providence Corp., La.App. 2 Cir., 107 So.2d 550 (awarding $100 nominal damages for inconvenience and embarassment resulting from wrongful seizure through legal process of a plaintiff's property).
In Rhodes v. Collier, 215 La. 754, 41 So. 2d 669, the Court refused to allow damages for the plaintiff's humiliation, embarassment, and inconvenience occasioned by the defendant's unlawful entry upon and seizure of her land. But it is to be noted that the reason for such refusal was not that this type of damages is not legally allowable, but simply that there was no basis in the record of that suit to support such award.[5]
Under the jurisprudence abovecited, the present record fully sustains the award made by the trial court for the wrongful and forceful invasion of the plaintiffs' inherent property rights and for their *105 mental anguish, humiliation, and embarassment thereby sustained.
We agree with the trial court that the trespasses were wanton and willful and committed without a vestige of legal right or good faith.
Defendant was warned prior to the trespasses but stated then that he did not intend to respect plaintiffs' enclosures. Merely to permit a more convenient access from one part of defendant's property to another, the fences surrounding plaintiffs' property were cut or removed in five places, and the horses and tractor of the field trial party indiscriminately trampled the stock pond levees and small seedlings in their path.
Defendant's pretended excuse, that he thought the boundary to be incorrectly situated, not only lacks a legal basis as sustaining his disturbance of the long prior uninterrupted possession of plaintiffs', but it is difficult to ascribe any serious reliance upon this contention.
Defendant Garnier (who owned and lived on the adjacent property) never questioned the boundary, although all the standing timber was cut on the land within its limits, until plaintiffs wished to erect a fence to protect their seedlings and to retain their grazing cattle. As the trial court indicated, his objection was not so much to the location of the fence as to the erection of any fence at all. The only source of his belief that the long-established boundary was incorrect seems to have been some neighborhood gossip of unidentified source, and defendant did not seek or obtain the services of a surveyor to establish any variance in the long recognized from the allegedly ideal boundary until several months after the suit for the trespasses was filed, when he imported a surveyor from Bastrop 150 miles away to testify that the ideal range line was 737 feet further east of the place where the Tangipahoa Parish surveyors had for many years placed its location. Further, as the trial court stated in noting the lack of good faith in the trespass, the defendant's party "travelled diagonally across the tract within plaintiffs' fence and did not merely trespass upon that portion of the land lying between the lines as set out by defendant's surveyor * * *."
Here, unlike in the Rhodes case, supra cit., the plaintiff testified as to his great mental anguish and disturbance resulting from the flagrant and deliberate invasion of his property. Such damages are proven and allowable.
b. Attorney's Fees.
A line of recent decisions have stated that attorney's fees may not be awarded as damages save when particularly authorized by statute or by contract. Breaux v. Simon, 235 La. 453, 104 So.2d 168; McNeill v. Elchinger, 231 La. 1090, 93 So.2d 669; Chauvin v. La Hitte, 229 La. 94, 85 So.2d 43; Griffin v. Bank of Abbeville & Trust Co., 228 La. 857, 84 So.2d 437; Brantley v. Tugwell, 223 La. 763, 66 So.2d 800; Smith v. Atkins, 218 La. 1, 48 So.2d 101; Efner v. Ketteringham, 217 La. 719, 47 So.2d 331; Rhodes v. Collier, 215 La. 754, 41 So.2d 669. The single exception generally noted by these cases is for the dissolution of conservatory writs; see, e. g., Brantley v. Tugwell, supra cit., at 66 So.2d 801: "The only exception, of which we are aware, is made in conservatory writs where the defendant succeeds in having the writ dissolved on motion and not on defenses applicable to the merits."
However, there seem to be other exceptions recognized by our jurisprudence wherein attorney's fees may also be awarded in the absence of statute or contract. For instance, "Where the property of a third person is illegally seized and he is forced to enjoin the seizure in order to release his property, attorney's fees may be recovered as damages [cases cited]," Smith v. Atkins, supra cit. at 48 So.2d 103. See Walker v. J. J. Ellis Lake Providence Furniture Corp., La.App. 2 Cir., 107 So.2d 550, and Gunn v. Credit Service Corp., La. App. 2 Cir., 46 So.2d 628, certiorari denied, *106 which in awarding attorney's fees in such circumstances pointed out a conflict in the jurisprudence concerning the question.
Likewise, attorney's fees have been awarded as part of the damages in suits arising from deliberate and unlawful forcible trespasses upon the property of another. Williams v. Harmanson, 41 La.Ann. 702, 6 So. 604; Cooper v. Cappel, 29 La.Ann. 213; see also: Nicol v. Illinois Central R. Co., 44 La.Ann. 816, 11 So. 34; DeGraauw v. Eleazar, La.App. 1 Cir., 24 So.2d 180, and the several court of appeal decisions therein cited. These cases have been questioned but never overruled. Efner v. Ketteringham, supra cit. at 47 So.2d 331-332; Rhodes v. Collier, supra cit., 41 So.2d 669. Indeed, in these latter two trespass cases, the Supreme Court specifically noted that it did not reach consideration of the legal right to attorney's fees in such actions because there was no evidence upon which to base the particular award demanded therein, in the absence of proof that the legal fees were actually paid or an obligation to pay them was actually incurred. This apparently was the basis of the Supreme Court's recent holding that the demanded attorney's fees did not confer upon it appellate jurisdiction when the appeal in Breaux v. Simon, supra cit., was transferred to this court.
Understood in the light of this background, the significance of the Supreme Court's recent denial of writs in the case of Loe v. Whitman, La.App., 107 So.2d 536, wherein attorney's fees for a wanton and deliberate unlawful trespass were granted as damages although the legal right to make such an award was seriously questioned, seems to be that our high tribunal has confirmed the long standing and never overruled jurisprudence permitting attorney's fees as damages under such circumstances when the obligation to pay them is proved.
In the present case, the plaintiffs proved their contract with their attorney by which they agreed to pay him $100 to bring and try the suit and an additional $200 to handle the appeal, if any. The trial court awarded plaintiffs $100. By answer to the present appeal, the latter have prayed that the award be increased in accordance with the proof of their legal obligation to pay an additional $200 in the event of appellate proceedings. We feel that plaintiffs are entitled to this increase, and the judgment will be amended accordingly. We may add that counsel's argument and his several briefs indicate exhaustive research and preparation and that his fee is fully earned.
The award of attorney's fees as well as of non-pecuniary damages in the case of an aggravated, forcible, and deliberately unlawful trespass upon the property of another seems to be based upon policy reasons relating to the fundamental sanctity of private property from arbitrary invasion,[6] as well as to afford a legal remedy to protect property rights deliberately and unlawfully violated by force or physical trespass in instances where the proveable pecuniary damage may be slight. The protection of lawful possessors of private property from arbitrary or unlawful depredation thereupon or deprivation thereof may well be the unifying principle explaining the three above-enumerated exceptions from the general rule that attorney's fees are not awarded as damages in the absence of statute or contract.

Decree.
For the above and foregoing reasons, the awards to plaintiffs will be increased to award an additional $200 attorney's fees as damages; and as thus amended, is affirmed in all other respects.
Amended and affirmed.
*107 ELLIS, J., recused.

On Rehearing.
Before LOTTINGER and TATE, JJ.
TATE, Judge.
Rehearing was granted herein, restricted to the question of attorneys' fees. Hence the sole issue presently before us is whether resultant attorneys' fees may be allowed as damages for wrongful trespass.
In our original opinion this question was answered in the affirmative. In so doing, we noted that the early jurisprudence permitting such awards had recently been questioned but never overruled (Efner v. Ketteringham, 217 La. 719, 47 So.2d 331; Rhodes v. Collier, 215 La. 754, 41 So.2d 669), unless by Breaux v. Simon, 235 La. 453, 104 So.2d 168.
While that latter case, striking out a claim for attorneys' fees for purposes of determining appellate jurisdiction, could be interpreted as holding that such an item is never recoverable as damages in a trespass action, it also contained language that the "record does not disclose any basis for plaintiff's claim for attorney's fee", 104 So. 2d 171, which could be interpreted as simply having held that there was no basis for such an award in the Breaux case in the absence of proof therein that such legal fees were actually paid or that an obligation to pay them had actually been incurred (see Efner and Rhodes cases, above cited); a situation in fact instanced by the record in the Breaux case.
In our original opinion herein, we adhered to the latter interpretation of the Supreme Court's decision in Breaux v. Simon, because of this latter circumstance and because (subsequent to the Breaux decision) the Supreme Court denied certiorari as to the Second Circuit decision in Loe v. Whitman, 107 So.2d 536, which had allowed attorneys' fees in the case of a wrongful and forcible trespass.
However, on application for rehearing herein it was called to our attention that the defendant-appellant's application to the Supreme Court for writs of certiorari and review in Loe v. Whitman had not complained of the award of attorneys' fees as a ground of error. Hence, it was urged, the denial of writs in Loe v. Whitman did not possess the significance attached by us to same.
We are constrained to agree with such contention. Further, subsequent to the denial of writs in the Loe case, our Supreme Court in striking out an allowance of attorneys' fees as damages arising from property improperly seized by writ of fieri facias again cast serious doubt upon earlier jurisprudence allowing as damages attorneys' fees incurred in connection with a trial on the merits, in the absence of statute or contract. Hernandez v. Harson, on rehearing, April 27, 1959, 237 La. 389, 111 So.2d 320, 324.[1]
For the foregoing reasons, our original decree and the trial court judgment herein are amended by striking out any award for attorneys' fees.
Original decree amended on rehearing.
ELLIS, J., recused.
NOTES
[1] The averment that the testimony of defendant's surveyor should have been accepted as establishing that the trespasses did not take place on plaintiffs' property because the true or ideal boundary was actually some 737 feet east of where plaintiffs' fence was situated along the line recognized for many years as the boundary of the properties, forms the basis of defendant's sixth or last specification of error. In view of our holding in the disposition of the initial specification of error that title is not at issue herein, it becomes unnecessary to discuss such contention.
[2] These exceptions are not re-urged on appeal, nor is any complaint made in this court as to the award being jointly in favor of the owner and the tenant. This appellate court may therefore consider such exceptions and arguments as abandoned. Texas Company v. Cooper, 236 La. 380, 107 So.2d 676; Banks v. Yarborough, La.App., 2 Cir., 104 So.2d 283; Federal Ins. Co. v. T. L. James & Co., La. App. Orleans, 69 So.2d 636; Louisiana Board of Pharmacy v. Smith, La.App., 1 Cir., 65 So.2d 654, affirmed 226 La. 537, 76 So.2d 722.
[3] Sandifer's testimony is somewhat ambiguous as to whether, in 1951 when he cut the timber, he did so during his own tenure as owner and delivered same to his predecessor in title (his employer), Lamb; or whether he did so during Lamb's tenure as owner and as Lamb's employee. In either event, all the timber on the land was cut by or at the direction of the owner, and in either event the legal consequences so far as regards evidencing corporeal possession of the land are the same.
[4] See, e. g.: "It is well settled under our law that only compensatory and not punitive * * * damages are recoverable for damages to property", Layne Louisiana Co. v. Superior Oil Co., 209 La. 1014, 26 So.2d 20, at pages 21-22; "It has long been the settled law in Louisiana that only compensatory damages, and not punitive damages, may be recovered in an action for tort," Breaux v. Simon, 235 La. 453, 104 So.2d 168, at page 170; see cases cited in 7 West's Louisiana Digest, Damages.
[5] See 41 So.2d 673, where the Court, after stating Mrs. Rhodes had as plaintiff demanded an award of damages for this item, held: "Mrs. Rhodes did not testify in the case or offer any evidence to support her claim for damages. Hence, recovery cannot be granted." (Italics ours.)
[6] Cf.: "The law jealously protects the possession to property against invasion and violence. * * * Public order and the highest interest of society require that no violence be done to one in peaceable possession of property," Nicol v. Illinois Cent R. Co., 44 La.Ann. 816, at pages 819-820, 11 So. 34, at page 35.
[1] With relation to our award herein for mental suffering caused by the trespass, it is also of interest that the Supreme Court, in its original opinion in this Hernandez case, affirmed an award for humiliation, mortification, mental anxiety, and physical discomfort and inconvenience arising from the loss of use and enjoyment of the automobile during the period of illegal seizure, specifically remarking: "Such an item is not confined to proof of actual pecuniary loss."