SUMMERS, Justice.
 

 Plaintiffs are the widow in community and surviving children of David M. Womack. During his marriage David Womack acquired, on October 19, 1922, about
 
 *220
 
 32 acres of land in Section 39, Township 8 South, Range 2 East, in East Baton Rouge Parish. Womack died in 1927, and in 1966 his widow and children brought this possessory action, alleging that they had been in possession of this property without interruption for more than one year prior to March 11, 1966, on which date employees of James Walsh disturbed their possession to a portion thereof by entering with a bulldozer and destroying five sections of the fence and a number of trees. The property in contest, consisting of approximately 1.5 acres, is shown for illustrative purposes as the shaded areas on the following sketch:
 

 • Defendant, Walsh and his wife Ulma Yaun, the latter appearing as intervenor,. admit entry upon the contested property, but'allege, to the contrary, that Ulma Yaun has been in possession as owner by virtue of an act of
 
 dation en paiement
 
 dated January 28, 1959, and she has possessed the property quietly and without interruption-for m'ore than one year-prior to March-11, 1966. On that date'' she and her husband instructed 'their employees to clear the trees, and Mrs. Womack ordered them off the property, thus disturbing their peaceful possession.
 

 Both the plaintiffs and intervenor prayed to be maintained in possession and that the other be ordered to assert adverse claims of ownership in a petitory action. This action, therefore, bears exclusively on possession without touching upon title. La. Civ.Code Arts. 3449, 3455, 3456; Code Civ.Proc. Art. 3658 et seq.; 1 Yiannapou
 
 *222
 
 los, Louisiana Practice, Civil Law of Property, Sec. 138 (1966).
 

 After trial, the District Court in East Baton Rouge Parish rendered judgment for plaintiffs, recognizing their right to possession of the contested area, and ordered defendant and intervenor to assert any adverse claim of ownership in a petitory action within sixty days, or be precluded from doing so thereafter. Defendant and intervenor appealed to the First Circuit where the judgment of the trial court was reversed. 213 So.2d 44. Plaintiffs then applied to this Court for certiorari, and we granted the writ. 252 La. 944, 215 So.2d 123.
 

 After David Womack acquired the 32-acre tract he moved onto the property on December 26, 1922. He established his home in a house located on the land south of the PIoo Shoo Too Road, west of and contiguous to the triangular tract in contest, and he farmed the area north of the road. At that time the triangular area in contest and the property on which the dwelling house was situated were enclosed within a common fence. Except for a section immediately in front of the house, which was removed in 1962 or 1963, the fences surrounding the entire area south of the Hoo Shoo Too Road have been constantly maintained until this date. The Womack barn, a well, and some cross fencing, which the Womacks built, were located on the disputed tract, where horses, cows and hogs were kept. Before the advent of gas service in the area shortly before World War II, the Womacks regularly cut firewood from the trees on the property.
 

 After Mr. Womack’s death in 1927, Mrs. Womack and her children continued to live on the property until 1930 when Mrs. Womack moved to her daughter’s house in Baton Rouge and rented the house and land to Gus Diez. Diez lived there with his family, farmed the land north of the road, planted strawberries, cut stove wood and kept horses, cows and hogs on the disputed tract as the Womacks had done. After his death, his son Callie continued as lessee until 1935 when he gave up the lease, and Mrs. Womack returned with her children to live on the property. Gradually the farming operations ceased.
 

 In 1954, to improve, widen and maintain the highway, the Highway Department obtained an additional right of way adjacent to-and adjoining the Hoo Shoo Too Road, This servitude grant, affecting all of the property south of the road, was signed by Mrs. Womack; and, as a .consideration for the grant, the Department removed the old fence and built a new one along the extended boundary line of the highway, again enclosing the disputed tract with the remainder of the homesite contiguous thereto on the west. At this time the barn had been torn down and plaintiffs used the contested property to - keep two old
 
 *224
 
 mules’ and a cow, remnants of their abandoned farming operations. Soon thereafter, a “coupla years”, the mules died and the property-has not been put to any particular use since that time. It slowly became overgrown with small trees and underbrush.
 

 Because of the encroaching small trees and underbrush, a bulldozer was hired by the Womacks in 1962 or 1963 to clear the area surrounding the house. At that time the well was filled, the fence in front of the house along the road was removed, and the area surrounding the house was cleared of trees and undergrowth — the clearing, which included the site where the barn had been, extending about 25 or 30 feet into the disputed area. Grass was planted on this clearing, and it has been mowed regularly since.
 

 When the bulldozer employed by the Walshes entered the disputed tract on March 11, 1966, Mrs. Womack was 72 years old. She had claimed and occupied the disputed tract continuously and notoriously as part of the dwelling site, either personally or through the Diez tenants, since 1922, a period of 44 years.
 

 The property shown as the “Walsh Tract” was acquired by John Walsh and his wife Ulma Yaun on July 8, 1955. Subsequently, John Walsh conveyed his interest to his wife by
 
 dation en paiement
 
 dated January 28, 1959. The property which they acquired was described, in part, as a tract of land fourteen miles below the city of Baton Rouge, containing fifty acres bounded east by lands of Richardson and lands of Reymond, north by lands of Burnett, south by lands of Booth, and south and west by lands of Brown.
 

 When they acquired the “Walsh Tract” they repaired the house located thereon across the Hoo Shoo Too Road immediately north of the disputed tract, dug a well, built a barn, plowed the ground and brought cattle and horses onto the property. They used the place on weekends for the children. No effort was made by the Walshes to exercise corporeal possession of the controverted tract until the disturbance on March 11, 1966, more than ten years from the date when they acquired the “Walsh Tract”. Nevertheless they contend that the disputed tract falls within the boundary description contained in their deed of purchase; and, by possessing the lands north of the road, they are understood in law to have civil possession of all the land within the boundaries in the deed, which they contend includes the disputed tract. They urge that they are entitled by virtue of this civil or constructive possession to maintain the possessory action allowed to persons- who have possessed for a year prior to a disturbance of their peaceable possession. The contention is based upon the principles an
 
 *226
 
 nounced in Articles 3437 and 3498 of the Civil Code:
 

 It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. La. Civ.Code art. 3437.
 

 When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits. La. Civ.Code art. 3498.
 

 The showing made, however, does not satisfy us that the boundaries referred to in the Walsh deed include the controverted tract. The deed describes the southern boundary of the “Walsh Tract” — obviously drawn without regard to the Hoo Shoo Too Road — to be “South by lands of Booth, and south and west by lands of Brown.” The Booth property is shown by the record to be the property which presently forms the southern boundary of the disputed tract, and, so far as we can ascertain from the record, it also formed the southern boundary of the Walsh Tract on the extreme southeastern corner.
 

 The “lands of Brown”, which are represented in the Walsh deed as the southern and western boundary of the “Walsh Tract”, appear to be the same lands which the Womacks are presently claiming, including the controverted tract. That is to say, if Brown did not own the disputed tract, he could not have bounded the “Walsh Tract” on the south; whereas, if he is the predecessor in title of the “Womack Tract” and bounded the “Walsh Tract” on the south and west, as the Walsh deed represents, Brown owned the disputed tract, which partly intervened between the Booth and Walsh properties. In any event the disputed tract could not be included in the Walsh title. Instead, it forms one of the boundaries of the Walsh Tract. There is no other explanation for bounding the “Walsh Tract”: “south and west by lands of Brown.”
 

 Moreover, in support of her position that she intended to possess the disputed tract, Mrs. Walsh testified that her attorney advised her that her title included this land. However, her attorney was not called to support her testimony nor was his failure to testify explained.
 

 These considerations preclude a finding that the southern extent of the title of the Walsh Tract includes the disputed tract. The Walshes are without right, therefore, to claim that species of possession recognized by Articles 3437 and 3498 insofar as the disputed tract is concerned. In short, they have failed to prove that their title includes the controverted tract to the south, which they must do to establish the necessary civil or constructive
 
 *228
 
 possession which would serve in lieu of the actual or corporeal possession required to maintain a possessory action.
 

 Aside from their affirmative contention that they have had civil or constructive possession of the disputed tract for one year preceding the disturbance, which we find to be without merit, the Walshes contend that the Womacks cannot maintain the possessory action, for the Womacks have not possessed the disputed property during the one-year period preceding the disturbance on March 11, 1966. La.Civ. Code art. 3449, 3455, 3456; Code Civ.Proc. art. 3658 et seq.; 1 Yiannopoulos, Louisiana Practice, Civil Law of Property, Sec. 138 (1966).
 

 Although apparently conceding that the Womacks possessed the disputed tract for many years, it is asserted that their possession ceased more than ten years prior to March 11, 1966 and, therefore, the possession they formerly exercised cannot be advanced in aid of possession during the one-year period prior to March 11, 1966.
 

 Articles of the Civil Code which are pertinent to this contention are:
 

 Article 3442. When a person has once acquired possession of a thing by the corporeal detention of it, the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others.
 

 Article 3443. This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of retaining it, and shall retain it in fact.
 

 Article 3444. To retain the possession of a thing when a man once has it, it is not even necessary that he should have such positive intention; a negative intention suffices, that is, it suffices that the positive intention, which he had in acquiring the possession, shall not have been revoked by a contrary intention; for, so long as this revocation does not take place, the possessor is supposed always to retain his first intention, unless a third person has usurped or taken from him the possession,
 
 or he has failed to exercise an actual possession for ten years.
 
 (Emphasis added.)
 

 This authority declares that civil possession which follows actual or corporeal possession lasts only ten years after the corporeal possession ceases.
 

 Evidence in the record shows that the Womacks gave a right of way to the Highway Department in 1954 and there
 
 *230
 
 after grazed a “coupla” mules on the property for two or three years. If there should be any doubt as to how long the mules grazed on the property and hence whether there was an “exercise of actual possession” within the ten-year period immediately preceding March 11, 1966, we are satisfied that the existence of fences surrounding the disputed tract, together with clearing a portion of it, filling in the well with a bulldozer in 1962 or 1963, and planting and mowing grass on the tract since that time, are sufficient to accomplish this result. Testimony establishing these facts was apparently accepted by the trial judge as credible, and we reach the same conclusion from our study of the record. We find no basis for the appraisal of this testimony by the Court of Appeal as “vague, indecisive and indefinite.” This evidence constitutes the heart of plaintiffs’ case, and it is entirely compatible with the plaintiffs’ position and the evidence in the record.
 

 Even without considering the fact that the property remained fenced, the longest period when no actual or corporeal possession was exercised by the Womacks would be approximately six years — the interval between the death of the mules (approximately two years after the Highway Department built the new fence, or 1956) and the date when the Womacks employed the bulldozer to clear a portion of the disputed tract and fill in the well (about 1962 or 1963). Under any interpretation of the facts, a period has never elapsed when the Womacks have “failed to exercise an actual possession for ten years”, which is the lacuna the law requires to destroy the continuity of their possession. Their possession, therefore, continued to the date of the disturbance on March 11, 1966 and was in effect for a period of one year prior to that date. The requirement of one year’s possession which enables them to maintain a possessory action is thus satisfied
 

 For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the Court of Appeal is reversed, and there is judgment in favor of plaintiffs, Mrs. Della Heard Womack, Jesse McLoyd Womack, Mrs. Bertha Womack Achord, Albert Edwin Womack, Lena Womack Lively and Clarence Floyd Womack, and against defendant James Walsh, and intervenor Ulma Yaun Walsh, recognizing plaintiffs’ right to the possession of the property in issue, to wit:
 

 A certain tract or parcel of land located on the south side of the Hoo Shoo Too Road in the form of a triangle, one side of which is said Hoo Shoo Too Road, the second side of which is the Herpig, formerly A. B. Booth property, and the third side of which is the projection across the Hoo Shoo Too Road of the line common to lots 1 and 2 on the north side of the Hoo Shoo Too
 
 *232
 
 Road as shown in a plat prepared by M. P. Robertson, Surveyor, in January of 1888 and of record as No. 89%, Bundle 29 in the Conveyance Records of East Baton Rouge Parish, Louisiana.
 

 It is further ordered, adjudged and decreed that plaintiffs be maintained in possession of the above described triangular tract or parcel of ground, and there is judgment herein ordering defendant, John Walsh, and intervenor, Ulma Yaun Walsh, to assert any adverse claim of ownership to the above described property in a petitory action to be filed within sixty days after this judgment becomes executory, or be precluded thereafter from asserting the ownership of said property.
 

 BARHAM, J., concurs in the result