BOUTALL, Judge.
This matter comes to us on appeal from the denial of a preliminary injunction. While the matter was pending on appeal there was filed a motion to dismiss appeal for failure to substitute indispensable parties, which, because of the basis thereof, will be discussed after discussion on the merits.
Mrs. Ella Bissell Davis, plaintiff-appellant, filed a petition for an injunction to restrain trespass to certain land, of which she alleges the real, actual, open and notorious possession. Suit is brought against Michael Caluda and Kenneth Caluda, who own the lots adjoining a portion of Mrs. Davis’ property. Suit was also brought against the City of New Orleans, but the City was dismised by the plaintiff as of non-suit, and there is no issue concerning the City before us.
The petition alleges that plaintiff has been in continuous, open and notorious possession of a certain piece of real estate for more than thirty (30) years and particularly for more than one (1) year prior to the trespass complained of herein. It is alleged that the Caludas on the second day of July, 1970, caused a bulldozer to run up on a portion of the property claimed to be possessed by the plaintiff, which knocked down a fence and did damage to the property itself. Suit is brought to enjoin the *774 trespass of the Caludas, and to restrain future disturbance of possession.
At this point it may be well to discuss the property with which we are concerned.[1] *775 Plaintiff exhibits an act of sale and assumption of mortgage dated January 14, 1959, wherein Mr. and Mrs. Davis acquired two parcels of ground which together make one tract 125 feet wide fronting on Farragut Street by a depth of 297.5 feet, bounded on the side opposite to Farragut by Saux Lane (Camus Lane). The first parcel, fronting on Farragut Street, consists of lots 1, 2, 3, 4 and 5 of Square 16 South New Orleans Subdivision. The second parcel immediately adjoins the rear of those lots and continues with the same side lines and are described as lots 128, 129 and part of 130 in Camus Subdivision. The title recites that these three (3) lots “each front on Saux Lane (Camus Lane), which said lane separates said lots from the Kohn property”.
The parcel of ground that forms the crux of the problem here is the area variously described as Saux or Camus Lane, and which adjoins and lies across the east line of plaintiff’s fee title so as to form a sort of “T”. It forms a sort of rectangle • approximately 38 feet wide by 225 feet in depth, lying between the line of Kohn property (now west line of Lauradale Subdivision) and the Camus Subdivision, in which plaintiff’s title rests.
Plaintiff’s property is bounded on the north by Copernicus Street, which runs only in South New Orleans Subdivision and adjoins lot 1 of square 16 thereof, owned by plaintiff. Behind Copernicus Street and forming continuous boundaries is lot C which similarly adjoins, on the north side, lot 128 of Camus Subdivision owned by plaintiff. This lot C has title measurements which similarly front on Saux or Camus Lane, and its location is such that it fills in almost entirely the northerly elbow of the “T” described above. It is this particular area, that is, where the north line of lot C connects with the north line of the claimed property, wherein the alleged trespass took place.
The defendants for some time have owned lot 127 of Camus Subdivision, which adjoins the north line of lot C, and recently, the defendants have acquired lot C. Plaintiff allegedly maintained the fence from the point just north of where the common boundary of lot 127 and lot C intersects what purports to be the line of Camus Subdivision or Saux or Camus Lane, as variously claimed. This fence starts just north of this point and proceeds easterly across what is claimed to be the lane to a fence maintained on the other side, that is, the Lauradale or Kohn side, by a property owner living there. The effect is such as to practically prevent anyone from using Camus or Saux Lane as a passageway along in this area.
On July 2, 1970, the defendant sought access to lot C and accordingly ran a bulldozer down along what they allege to be Camus or Saux Lane and pushed a path through the thicket or wooded area near the intersecting point referred to and made a right turn into lot C. This was followed by several truck loads of fill, etc. This act of defendants precipitated the present suit for injunction.
Appellant contends her suit is based entirely upon the possession described in LSA-C.C.P. art. 3663(2) and seeks injunc-tive relief, not as an ancillary remedy in a possessory action, but for the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, which is neither a possessory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936).
Appellant urges to us that all that is required in such a suit is proof of real and actual possession at the time of disturbance to be thus protected. Lee v. Harris, 209 La. 730, 25 So.2d 448 (1946); Loeblich v. Garnier, 113 So.2d 95 (La.App. 1st Cir., 1959); Wright v. Holder, 72 So.2d 529 (La.App. 2nd Cir., 1953).
Appellant assigns as error the fact that the trial judge permitted evidence of ownership and title to be introduced because such is irrelevant to the possession and that this is recognized even where the property in question may be public property. Bonnabel *776 v. Police Jury for Parish of Jefferson, 3 So.2d 183 (La.App. 4th Cir., 1941). Similarly it is urged that the judgment of the court is itself based on ownership and title and thus erroneous. Roge v. Kuhlman, 136 So.2d 819 (La.App. 3rd Cir., 1962) and the cases cited above. Additionally, appellant contends that she has satisfied the requirements of possession necessary to maintain her suit. Womack v. Walsh, 255 La. 217, 230 So.2d 83 (1969).
We agree with the proposition that a suit under LSA-C.C.P. art. 3663(2) has as its basis possession only, but we also agree with the evidentiary rulings of the trial judge herein because of the way the trial progressed.
The original petition described only the disputed area of Camus or Saux Lane. The amended petition included both the disputed area and the title area described above as a “T” shaped tract.
The defendant-appellees, on the other hand, although they filed no answer, contended on this rule that the area in question is a public street owned by the City of New Orleans and hence no one can possess it as against the public right of use. Defendants additionally contend that there was no possession of the property as defined by the law, the area being open and unfenced and not obviously under the control and possession of the plaintiff.
The first witness called by the plaintiff was John E. Walker, Civil Engineer and Surveyor, who testified under direct examination that the disputed property was attached to the title property and accrued to the owners of the adjoining lots. He then testified as to fences. This evidence thus broadened the inquiry conformably to the provisions of La.Civil Code articles 3437 and 3438[1] such that the nature of the claim of possession was changed. Similar testimony of ownership (although differing in result) was elicited from the other witnesses. Since plaintiff herself broadened the issues, she cannot complain as to countervailing evidence by defendants.
 Additionally, we note that the defendants have filed the peremptory exception of no cause of action and the peremptory exception of no right of action, each of which has as its basis the fact that the area in question is a part of Camus or Saux Lane and hence insusceptible of possession by a private individual. The exceptions were taken up at the same time as the rule nisi, and were considered in connection therewith. It is obvious that the peremptory exception of no cause of action is not susceptible of additional evidence, but must be decided on the pleadings of plaintiff, and that all the well pleaded allegations thereof must be accepted as correct. LSA-C.C.P. 931. A reading of the petition and the supplemental petition convinces the court that a cause of action was shown and hence this exception is overruled, and the judgment of the trial court in connection therewith is affirmed.
On the exception, of no right of action, the evidence as to title and ownership may properly be considered, and in connection therewith the trial court found that the defendant-exceptor had not shown the required preponderance of evidence that the City owns all of the area designated as Camus or Saux Lane, or that portion of the lane over which the bulldozer is supposed to have driven. Thus the exception of no right of action was overruled.
With regard to the ownership of this particular piece of ground, there were placed into evidence the act of sale of *777 property to plaintiff above referred to, as well as a number of surveys made of the area, together with the testimony of two surveyors in connection therewith. An examination of the various surveys convinces us that there are questions as to the ownership of the property in dispute, and whether or not the area traversed by the bulldozer is in fact a part of Camus Lane or simply extra property.
In an effort to resolve this question, plaintiff placed two surveyors upon the stand to testify. The first of these was John E. Walker, who prepared a survey for plaintiff for the purposes of trial. His explanation of the strip of property in question is that it was excess ground accruing to the owners of lots in Camus Subdivision. He pointed out that Saux Lane runs 22 feet in width along the west line of the Kohn property or the Lauradale Subdivision, and that the strip of ground fronting along Camus Subdivision belonged to the predecessors of the Subdivider and hence, although the title measurements call for 179.5 feet, the description also calls for front on Saux Lane, and thus the property should be extended out the additonal width of that strip to front on Saux Lane. While this explanation denies the City ownership of the strip in question, yet nevertheless if his proposition should be true, then the property which the bulldozer traversed should belong to the owner of lot C in the main, and the owner of lot 127 for 2 or 3 feet. The owners of these lots are the defendants.
The other surveyor presented by plaintiff was Mr. Guy Black, Civil Engineer and Surveyor, who surveyed the area for the City of New Orleans in connection with the development of that strip as a street, the City having developed the street just short of this area and now being in the process of developing a through street. He contends that the area in question is a public street, and taken together with the undisputed dimension of Saux Lane, 22 feet, and the adjoining strip in question which may or may not be Camus Lane, a public street is made of approximately 50 feet in width.
Other surveys introduced in evidence would indicate the possibility that Saux Lane is on one side of the strip and that there is an undescribed or unowned strip adjoining and then Camus Lane adjoins Camus Subdivision, thus forming two roadways with a non-City owned strip in the center. Considering the evidence thus introduced, we cannot conclude at this time the precise title ownership of the property in question, and we must agree with the trial judge that the exceptor has not borne the burden of proving with a preponderance of the evidence that the area traversed is indeed owned by the City. For that reason we must affirm his overruling of the exception of no right of action.
Thus we come to a consideration of the basis of the rule nisi for an injunction; that is, did plaintiffs exercise sufficient possession, peaceably, openly and notoriously, such that we should issue a preliminary injunction herein.
The evidence indicates that plaintiff began living on the property some time around 1952 at which time the property was owned by plaintiffs daughter. After several years, because of the encroachment of the heavily wooded area to the north, consisting of the unopened portion of Copernicus Street and lot C, both mentioned above, the defendant and her husband cleared the area of Copernicus Street and lot C and used it as a portion of their grounds, keeping the grass cut in large part and placing thereon a number of plants and fruit trees. The area so cleared extended up to a fence on the north line of these two parcels, previously constructed by the owner on that side.
At some slightly later date, the plaintiff extended the planting of trees easterly through the disputed area of Camus or Saux Lane. A barbed wire fence was constructed from the existing fence just off the continuation of the line between lot 127 and *778 lot C across Camus or Saux Lane to where it was just several feet short of an existing fence. The express purpose of the fence was that Mr. Davis had planted a number of experimental trees in this area, and that he wished to keep out children and trespassers who might hurt his trees. We are convinced that the nature of this area differed considerably than the other area surrounding the Davis home, because this area was not cleared very much and consisted in the main of a heavy thicket or wooded area with fair sized trees, brush and shrubbery therein. It was explained that this area was to be a sanctuary for wild birds and animals. To further complicate the matter there was a growth of cane which had been planted in the area by a neighbor and shoots of which Mr. Davis planted to grow in the fence area.
Apparently Mr. Davis used the area for his experimental trees for a number of years although by others it was used for passage and other reasons from time to time. However, in 1968, Mr. Black, together with a City surveying team, cut the existing fence in order to lay out his survey lines for the proposed street. It is admitted by Mrs. Davis that although the fence was repaired immediately, that there was constant destruction of the fence since 1968 by various people. Additionally, it is equally apparent that there were a number of conflicts between the Davises and the defendants over the use of this section of the property as well as conflicts in the use by the defendants of lot C after it was purchased by them. In 1968, Michael Caluda cleared off the area in dispute. There is considerable testimony in the record that the area claimed to be possessed was not completely fenced off or enclosed by the Davises, but was open in a number of sections.
The evidence is also complicated by the fact that the enclosure relied upon by plaintiff could only be achieved by considering (as appears from the testimony of Mrs. Davis and her daughter) that the entire tract was enclosed, that is, not only the “T” shaped area but also Copernicus Street and lot C. The fence on the north side ran not along plaintiff’s property but on the other side of those two parcels and without considering them, there can obviously be no enclosure, especially since there was no fence on the south side and only fences of owners in Lauradale Subdivision along the east.
Thus this case differs from Roge v. Kuhlman, supra, because in that case there was a complete fence with cleared land within the area up to the fence, there being several gaps in the fence due to fallen trees. Here, without considering Copernicus Street and lof C, we have only an incomplete fence across the north side, an incomplete line of neighbors’ fences on the east, and nothing on the west and south. This does not constitute an enclosure as set out in Roge, supra, or as in Bagents v. Crowell Long Leaf Lumber Co., 20 So.2d 641 (La.App. 1st Cir., 1945).
On the other hand, if we consider the fence along Copernicus Street and lot C, together with Farragut Street as a determinate line of demarcation, we would have a fairly substantial enclosure. Plaintiff does not urge this proposition to us, however, and we note that as to Copernicus Street the City opened it up to public use apparently in 1969, and that possession of lot C was stopped by the action of that owner in 1968.
The trial judge concluded that the plaintiff had not established possession over that portion of the land which the bulldozer traversed, and denied the issuance of a preliminary injunction. After a careful review of the evidence presented, we cannot say that there is manifest error, and we affirm his judgment.
Plaintiff urges to us that he has exercised the necessary possession and refers to Loeblich v. Garnier, supra, and Womack v. Walsh, 255 La. 217, 230 So.2d 83 (1969). We believe the facts and the proof of possession to be different in this case.
*779 In Loeblich, the original owner had had the land surveyed and cut off all the timber. He sold to Loeblich who in turn leased it to a tenant for pasture and who constructed a fence thereon. This was held to be sufficient possession.
In Womack, the property had been fenced with and used as part of a tract to which the owner had title and continuously exercised open possession, personally or through a tenant for 44 years.
Our case differs in that there is no showing of peaceable possession as in those cases and particularly possession for the year preceding the institution of the suit. Bonnabel v. Police Jury for Parish of Jefferson, supra. We feel this to be of particular importance since this is a rule nisi for a preliminary injunction only, not the final determination on the merits.
Additionally, we point out that the present proceeding makes no attempt to declare ownership or title, and we do not do so.
This brings us to a consideration of the motion to dismiss the appeal for failure to substitute indispensible parties. During the pendency of this appeal the plaintiff sold to another the property described in the act of sale and assumption dated January 14, 1959. As noted above, the property wherein the trespass is alleged to have taken place is not included in that property sold, but instead, is a strip along the front thereof in a “T” fashion, and the alleged trespass took place on the outermost point of the “T”, a distance of some 30 to 50 feet north of the described property. Therefore, even if we were to consider the testimony of Mr. Walker, the surveyor, as being correct that the property in the front of these lots did accrue to the owners thereof, we could consider that the transfer of lots 128, 129 and part of 130 would serve to transfer that portion of the disputed property which lies mainly in front of lot C and several feet of lot 127. The motion to dismiss the appeal is denied.
For the reasons set out above, we are of the opinion that the judgment of the trial court should be affirmed at the costs of appellant.
Affirmed.

. A sketch is attached for convenience.

. “Art. 3437. It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, jjrovided it be with the intention of possessing all that is included within the boundaries.” “Art. 3438. One may acquire possession of a thing, not only by himself, but also through others who received it for him and in his name. But in this case it is necessary that the person receiving the possession should have had intention of receiving for the other.”