232 So.2d 99 (1970)
Jesse WARNER et al., Plaintiffs-Appellants,
v.
Thompson L. CLARKE et al., Defendants-Appellees.
No. 11344.
Court of Appeal of Louisiana, Second Circuit.
February 3, 1970.
Rehearing Denied March 3, 1970.
Writ Refused April 20, 1970.
Hamilton & Carroll by Donald K. Carroll, Oak Grove, for plaintiffs-appellants.
William B. Ragland, Jr., Lake Providence, John T. Seale, Tallulah, for defendants-appellees.
Before AYRES, DIXON, and PRICE, JJ.
DIXON, Judge.
This is a suit to enjoin the district attorney and the sheriff of East Carroll Parish from prosecuting the plaintiffs for trespass under R.S. 14:63. One plaintiff is *100 domiciled in East Carroll Parish; the other three are domiciled in West Carroll Parish. Plaintiffs allege that they have been arrested by the sheriff of East Carroll Parish and threatened with prosecution.
The lands involved lie adjacent to the Mississippi River south of the Arkansas line and include the levee and land between the levee and the river. There are various bodies of water located on this land which are, or have been, navigable.
The petition alleges that considerable quantities of fish and game abound in the area involved, and that petitioners hold hunting and fishing licenses, and desire to hunt and fish on the lands involved. Their arrest, and threatened prosecution by the district attorney, they allege, will result in irreparable harm by loss of their alleged right to use the lands involved, or by wrongful prosecution.
The answer does not contradict any of the allegations of the petition, except for the petitioners' claimed right to hunt. An "Agreed Stipulation of Facts" is included in the record. No oral testimony was adduced. The case was submitted on the pleadings and the stipulation.
It was stipulated that the lands are owned by private individuals or corporations, and that the vast majority of the owners or lessees of the land have posted it in accordance with the requirements of R.S. 14:63. There are roads on the levee, constructed with public funds, but not open to the public.
The stipulation concluded with an agreement that the "following are the issues to be decided by the Court:
"(a) Does the riparian servitude in favor of the public affecting the banks of navigable streams, give the public the right to freely enter upon riparian lands, particularly the lands described in Exhibit A, for the purpose of hunting and fishing thereon when: (1) entering by navigable streams or lakes?; (2) entering otherwise.
"(b) Can the lands and the levee servitude shown on Exhibit A be posted in accordance with the provisions of Louisiana Revised Statutes 14:73? (sic)
"(c) Considering the existence of said servitude, can said lands and the levee servitude itself be posted against all forms of trespassing by the owners and/or lessees thereof in accordance with the provisions of LSA RS 14:73?" (sic)
There was judgment in the trial court for the defendants, rejecting the demands of the plaintiffs. In a scholarly and impressive opinion, the trial judge decided that the plaintiffs did not have a right to go upon the levees and the lands of others that lay between the levee and the river for the purpose of hunting and fishing.
The appellants claim that their rights to the land come from provisions of the Civil Code. Article 455 of the Civil Code declares that the use of the banks of navigable rivers is public. Article 453 states that public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation. Article 457 says that the levees form the banks on the borders of the Mississippi River. Plaintiffs claim that although the land between the levee and the river is subject to private ownership, that ownership is imperfect, according to Article 490.
The statutory basis for the plaintiffs' claimed right to hunt and fish on the levee and the land between the levee and the river is Article 455 of the Civil Code:
"The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.

"Nevertheless the ownership of the river banks belongs to those who possess *101 the adjacent lands." (Emphasis added.)
The prayer of the petition is for judgment "decreeing that the lands * * * are subject to a servitude in favor of the public or, that is, subject to public use" and for an injunction against the arrest and prosecution of the plaintiffs when hunting, fishing or walking on the lands described.
At the outset, it must be noted that we cannot render a declaratory judgment in this case, principally because of the absence of indispensable parties. No owner of land involved is a party to this litigation, yet we are asked to hold that private lands are subject to a servitude in favor of these plaintiffs and the public generally. The Code of Civil Procedure provides in Article 641:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
"No adjudication of an action can be made unless all indispensable parties are joined therein."
The non-joinder of an indispensable party may be noticed by the appellate court, on its own motion. C.C.P. 927. We cannot decide whether lands are burdened with a servitude unless the owners of the lands are parties to the litigation.
The power of a civil court to enjoin criminal prosecution is frequently a subject of dispute in cases similar to this. Our courts have repeated that three circumstances must exist before the enforcement of a penal ordinance may be enjoined. First, there must be a property right in the plaintiffs, the invasion of which is threatened by the defendants; second, there must be an ordinance or statute which is manifestly unconstitutional; and finally, there must be a threatened irreparable injury as a result of a demonstrable inability to obtain an adequate remedy in the courts having jurisdiction of the threatened prosecution. Sears Roebuck and Company v. City of New Orleans, 238 La. 936, 117 So.2d 64 (1960); Olan Mills, Inc. of Tennessee v. City of Bogalusa, 225 La. 648, 73 So.2d 791 (1954); Baton Rouge Fireworks Company, Inc. v. Police Jury and Sheriff of Parish of St. Charles, 127 So.2d 54 (1961).
For example, in Everhardt et al. v. City of New Orleans, La.App., 208 So.2d 423 (1968) (reversed on other grounds at 253 La. 285, 217 So.2d 400), the Court of Appeal rendered a declaratory judgment holding a city ordinance unconstitutional, but refused an injunction because the plaintiffs "failed to prove enforcement of the helmet ordinance will cause or has caused irreparable injury."
There is doubt that either the district court or this court possesses the power to enjoin the prosecution in this case because here, as in Theodos v. Bossier City et al., 232 La. 1059, 95 So.2d 825 (1957), there is no contention by the plaintiffs that the statute complained of is unconstitutional, but only that the plaintiffs have been exempted by operation of law from the provisions of the statute which form the basis of the threatened prosecution. There is, however, this difference in the case before us and the Theodos case: in the Theodos case, there had been a conviction under the statute complained of, and the appeal from that conviction was pending before the district court in which Theodos sought the injunction. In the case before us, the plaintiffs allege that they have been arrested, but there is no allegation concerning a presently pending prosecution.
Regardless of the doubt that may exist about the propriety of an injunction in a case where it is not contended that the penal statute complained of is unconstitutional, it seems clear that the plaintiffs here have no right to an injunction because they *102 do not possess a property right threatened with invasion.
Whatever Article 455 once meant about the use of banks of navigable rivers, subsequent legislation has made it apparent that the legislature did not intend to maintain a right in these plaintiffs or in the general public to hunt and fish upon the levees and the land that lies between the levees and the Mississippi River. R.S. 14:63 defines "criminal trespass" as follows:
"* * *
"(2) The unauthorized and intentional entry upon any:
"(a) Plot of immovable property in excess of one acre which is posted but not enclosed, unless said property is situated in an open range area; or
"(b) Plot of immovable property which is posted and enclosed, including property situated in open range areas; or
"(c) Posted lands belonging to public institutions; or * * *.
"Where an entry is made from a waterway for emergency purposes the party in distress may use the banks of said waterway without violating the provisions of Paragraph 2.
"B. Definitions
"For purposes of criminal trespass, the following definitions are adopted:
"(1) `Posted' property means any immovable property which is designated as such by the owner, lessee or other person lawfully authorized to take such action, provided the following requirements are satisfied:
"* * *
"(2) `Enclosed' property means any immovable property which is surrounded or encompassed by natural and/or artificial barriers.
Natural barriers include:
"(a) The Gulf of Mexico,
"(b) Lakes or ponds or other bodies of water which hold water during twelve months of the year,
"(c) Any river, stream, bayou or canal in which water is held or runs during twelve months of the year,
"(d) Other similar natural barriers.
"Artificial barriers include:
"(e) Any wall or wire, stone, metal or wooden fence,
"(f) Any cattle-guard being used as part of a fence,
"(g) Other similar barriers.
"* * *."
Louisiana's trespass statute has been frequently amended and reenacted (see Act 458 of 1960 and Act 497 of 1964). Article 665 of the Civil Code provides that problems related to public servitudes are regulated by "laws or particular regulations." Our courts have repeatedly held that the riparian servitudes are not subject to a broad and liberal construction, as contended by the plaintiffs, but exist "only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor." Hebert v. T. L. James & Company, Inc. et al., 224 La. 498, 70 So. 2d 102, 106 (1953), quoting from Carollton R. Company v. Winthrop, 5 La.Ann. 36 (1850); Lake Providence Port Commission v. Bunge Corporation, La.App., 193 So.2d 363.
It does not seem that a fair interpretation of C.C. 455, which gives everyone the right to land his vessel and tie up to trees on the banks, and there "to dry his nets, and the like" could construe that article to grant to the public the right to hunt and fish upon the lands and waters between the river and the levee. The right to hunt and fish on these lands seems unrelated to the nature and the navigable character of the Mississippi River.
There are roads on the levees which have been built with public funds. R.S. 38:966 *103 declares that they shall not become public. Plaintiffs claim that this results in an unconstitutional use of public funds for private benefit, and, in addition, cannot affect roads that might have become public before the enactment of R.S. 38:966 and its predecessors. Which roads these may be, we cannot determine from the record.
For the same reasons that prohibit our rendering a declaratory judgment concerning the servitude claimed by the plaintiffs, we cannot render a declaratory judgment concerning the public nature of roads on the levees.
Plaintiffs claim the right to hunt and fish. If the roads on the levees are in fact private, plaintiffs cannot use them. If the roads on the levees are public, the law prohibits hunting on them (R.S. 32:292). Private or public, hunting from levees is specifically prohibited by R.S. 38:213.1.
Since we find no property right in these plaintiffs which enables them to hunt and fish between the river and the levee, they are not entitled to an injunction. Consequently, the judgment of the district court is affirmed, at the cost of the appellants.