261 So.2d 669 (1972)
INDIAN BAYOU HUNTING CLUB, INC., Plaintiff-Appellee,
v.
L. J. TAYLOR et al., Defendants-Appellants.
No. 3695.
Court of Appeal of Louisiana. Third Circuit.
February 7, 1972.
On Rehearing April 19, 1972.
Rehearing Denied May 16, 1972.
*670 Olivier & Brinkhaus, by Armand J. Brinkhaus, Sunset, for defendants-appellants.
Dubuisson & Dubuisson by James T. Guglielmo, William A. Brinkhaus, Opelousas, Babineaux & Huval by Jack N. Huval, Lafayette, for plaintiff-appellee.
Before SAVOY, MILLER and DOMENGEAUX, JJ.
SAVOY, Judge.
Plaintiff, as lessee of certain real property in St. Landry Parish, Louisiana, brought this suit against defendants alleging they were trespassing on a portion of said property leased without the consent of lessee; that defendants maintained a camp on said property; that although notified to remove said property and desist trespassing on said leased property, defendants have continued to ignore said request. Plaintiff also alleged that it feared defendants would continue to damage said property and requested that the court issue a permanent injunction against defendants enjoining them from trespassing and hunting on said property. Plaintiff also prayed for damages, but that claim has been abandoned and is not before us for decision.
Defendants filed a general denial to plaintiff's petition, and then assuming the position of plaintiffs-in-reconvention, stated that recently they have been boat riding on Lake Fordoche, Bayou Fordoche and Dixie Canal, and that because of certain obstruction placed in said streams, they have been unable to navigate in the above-mentioned streams; that defendants have maintained a camp on Lake Fordoche on a four-acre tract adversely and notoriously for a period in excess of thirty years. Plaintiffs-in-reconvention prayed for an injunction enjoining defendant-in-reconvention from interfering with the free use of the above streams, and also from interfering with the use of the camp, and also asked for damages for blocking navigable streams and interfering with their use of the camp site. They also asked for attorney's fees. Defendants further alleged they owned the camp site for a period in excess of thirty years. Defendants filed an exception of no cause of action on the basis that plaintiff's petition did not allege irreparable injury as provided for by LSA-C.C.P. Article 3601, and also prayed for a money judgment.
After a trial on the merits, the trial court granted plaintiff an injunction enjoining defendants from trespassing on land leased to plaintiff, and from using Dixie Canal for navigation purposes. The court also granted judgment in favor of defendants (plaintiffs-in-reconvention) enjoining plaintiff (defendant-in-reconvention) from blocking and interfering with the use of Lake Fordoche and Bayou Fordoche. From this judgment defendants have appealed. Plaintiff has answered the appeal.
*671 The first issue to be determined by this Court is that of the exception of no cause of action filed by defendants.
In plaintiff's petition there is no allegation that it will suffer irreparable injury, and it has asked for a money judgment, in addition to the prayer for an injunction against defendants.
LSA-C.C.P. Article 3601 provides in part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law."
In the case of Greenberg v. De Salvo, 254 La. 1019, 229 So.2d 83, the Supreme Court of this State said:
"`Irreparable injury justifying an injunction is that which can not be adequately compensated in damages, or for which damages can not be compensable in money. * * *' Pennington v. Drews, 209 La. 1, 24 So.2d 156, 163. * * *.
"The writ of injunction, being a harsh, drastic, and extraordinary remedy, should issue only where the party seeking same is threatened with irreparable loss or injury without adequate remedy at law. * * *." (Citations omitted.)
Since plaintiff has not alleged irreparable injury as required by LSA-C.C.P. Article 3601, and has, in fact, prayed for a money judgment, we are of the opinion that the exception of no cause of action should be maintained, and plaintiff's suit dismissed at its costs.
We next consider the reconventional demand. As to the reconventional demand, there are four issues to be determined: (1) whether the Dixie Canal is a navigable stream; (2) whether defendants (plaintiffs-in-reconvention) are entitled to the ownership of the camp site by virtue of thirty years prescription; (3) should defendants be granted damages; and (4) should defendants be allowed attorney's fees.
The record reveals that Dixie Canal was built by a private corporation for its individual use. Counsel for defendants contends that the canal is navigable and subject to use by the public.
In D'Albora v. Garcia, 144 So.2d 911 (La.App. 4 Cir. 1962) (cert. den.) the court went into a detailed discussion as to when a stream is navigable. In its opinion, the court said:
"A test of the navigability of water bottoms is that those which are navigable in fact must be regarded as navigable in law, and they are navigable in fact when they are so used or are susceptible to such use, or are shown to be capable of commercial use. * * *." (Citations omitted.)
Applying the test mentioned above to the facts of the instant case, we conclude that Dixie Canal is a navigable stream.
The next issue is that of the ownership by defendants of the campsite. LSA-C.C. Articles 3499-3505 deal with acquisitive prescription of thirty years for immovable property.
LSA-C.C. Article 3500 states:
"The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."
LSA-C.C. Article 3503 states:
"How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it."
Defendants have not proven that they have complied with the provisions of either article of the Civil Code cited above. We *672 conclude that the trial court properly rejected their ownership to the camp site. Counsel for defendants argues that they are entitled to maintain the camp as their answer has alleged sufficient facts to claim possession of said property under the Code of Civil Procedure dealing with possessory action. We are of the opinion that the pleadings are not broad enough to cover the possessory action. However, admitting for purposes of argument that the pleadings would be broad enough for this purpose, there is no showing that defendants have possessed said property without interruption for a period in excess of one year of the disturbance as provided for by LSA-C.C.P. Art. 3658.
Defendants pray for damages for obstruction of the public streams and for preventing them from using the camp site. Defendants, having failed to prove thirty years acquisitive prescription as provided by the articles of our Civil Code enumerated herein, cannot recover damages for plaintiff preventing them from entering the camp site. Defendants sued for damages because of plaintiff's obstruction of the stream in controversy. There is not sufficient evidence in the record to justify an award for damages on this item.
LSA-C.C.P. Article 3608 provides:
"The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits."
Since permanent injunctions are not covered by the above article, the claim for attorney's fees is hereby rejected.
For the reasons assigned the judgment of the district court is reversed in the following respects:
(1) by decreeing Dixie Canal to be a navigable stream; and
(2) sustaining the exception of no cause of action and dismissing plaintiff's suit.
In all other respects the judgment of the district court is affirmed. Costs in both courts to be paid one-half by plaintiff and one-half by defendants.
Reversed in part, affirmed in part and rendered.
DOMENGEAUX, Judge (concurring).
I concur in the result herein but differ from the reasons advanced for dismissing plaintiff's suit. Although plaintiff coupled its injunction suit with a claim for a money judgment, the latter claim was abandoned before trial. This action amounts to plaintiff electing to proceed solely with the injunction suit, a procedure which is permissible under the jurisprudence. Thalheim v. City of Gretna, 17 La.App. 657, 136 So. 184; People of the Living God v. Chantilly, La.App., 211 So.2d 445. Therefore the trial court was correct in allowing the case to proceed to trial on the injunction.
Of greater import in the majority opinion is the dismissal of plaintiff's suit for injunction because irreparable injury was not alleged as required by LSA-C.C.P. Art. 3601. It is my opinion that under the latter article it is not necessary to allege irreparable injury so long as the petition alleges facts which show that the injury would be irreparable. O'Beirne v. Police Jury of Red River Parish, 153 La. 357, 95 So. 862; Williams v. Douglass, 21 La.Ann. 468.
In this case I conclude that plaintiff's petition did not allege facts which show irreparable injury, and it should be dismissed *673 for that reason, and not for the reasons stated in the majority opinion.

ON REHEARING
MILLER, Judge.
We granted this rehearing to consider the contentions that we erred 1) in maintaining the exception of no cause of action, 2) in holding that the Dixie Pipe Line is a navigable stream, and 3) in failing to rule that that part of Bayou Fordoche located north of Lake Fordoche is non-navigable. The first two contentions are valid and the third is rejected.
Can this lessee enjoin trespassers without alleging or proving irreparable harm? Under LSA-C.C.P. 3663(2), we find that it can.
The pertinent parts of LSA-C.C.P. Art. 3663 provide:
"* * *
"Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
* * * * * *
"(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
"This article makes no change in the law," according to comment (a). Comment (b) states that:
"(b) Injunctive relief is made available in two separate and distinct types of cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936)." (Emphasis added.)
Since the article made no change in the law, it is necessary to consider the source of C.C.P. 3663(2). It was Code of Practice Article 298(5) which provided:
"The injunction must be granted, and directed against the defendant himself, in the following cases:
* * * * * *
(5) When the defendant disturbs the plaintiff in the actual and real possession which such plaintiff has had for more than one year, either of a real estate or of a real right, of which he claims either the ownership, the possession or the enjoyment." (Emphasis added.)
It is apparent in 298(5) that the phrase "of which he claims either the ownership, the possession or the enjoyment" (emphasis added) modifies both possession of real estate and possession of a real right.
A literal reading of C.C.P. 3663(2) could lead to the misconstruction that a plaintiff may sue for an injunction only when 1) he has possessed immovable property for one year, or 2) when he has possessed a real right for one year and claims either the ownership, the possession, or the enjoyment thereof. It may be argued therefore that the possession referred to in category 1) is as owner as indicated at C.C.P. Art. 3660. But 3660 refers to corporeal possession coupled with intent to possess as owner and admits, a fortiori, that though it may be insufficient for purposes of 3660, corporeal possession may exist without intent to possess as owner. It is this corporeal possession alone that is required by 3663(2) under its wording "* * * disturbed in the possession * * * had for more than one year * * *."
This is supported by the finding that the phrase [found at the end of 3663(2)] "* * * of which he claims the ownership, the possession, or the enjoyment" is read to modify "possession * * * of *674 immovable property" as well as "real right". This interpretation and modification was used in Loeblich v. Garnier, 113 So.2d 95, 99 (La.App. 1 Cir. 1959) in discussing Code of Practice Art. 298(5). It was there held:
"* * * Under C.P. Art. 298(5), the court must upon application issue an injunction against disturbance by others to anyone claiming `either the ownership, the possession or the enjoyment' of immovable property who has been in possession thereof for longer than one year." (Emphasis in the opinion.)
Since C.C.P. 3663(2) makes no change in C.P. 298(5), 3663(2) read with this modification provides that a plaintiff in corporeal possession for one year of immovable property may be granted an injunction if he claims "the ownership, the possession, or the enjoyment" of that property. To read the requirement of possession for one year as requiring possession "as owner" makes the provision [at the end of 3663 (2)] that plaintiff claim "possession" redundant and meaningless. To ascribe meaning to all language in 3663(2) the first requirement of possession requires corporeal possession only.
Under C.P. Art. 49(1), the words "actual and real possession" appeared. These words were changed to "in possession" when 49(1) was reenacted in the new code as C.C.P. Art. 3660. However, according to the comments thereunder, this change effected no change in the law. Likewise C.P. Art. 298(5)'s language of "actual and real possession" was changed in C.C.P. Art. 3663(2) to "in possession" with no change in the law. This implicit reference in C.P. Art. 298(5) to 49(1) and by C.C.P. Art. 3663(2) to 3660 was necessary and the reasons therefor negate incorporation, in the injunction articles, of a requirement of possession as owner even though 3660 and 3663(2) appear in the same chapter.
Article 298(5) appeared in the Code of Practice in Part II, Title I, Chapter 2, Section 4, paragraph 5, dealing with injunctions. In approaching and applying Art. 298(5) in Loeblich v. Garnier, it was necessary to define the concept of "actual and real possession." Since there was insufficient delineation of the concept in the cases dealing with Art. 298(5), it was seen fit, and correctly so, to refer to Part I, Title I, Chapter 3, section 2, paragraph 2 (dealing with possessory actions) and to cases thereunder which, with great detail, had defined the concept of corporeal or actual and real possession. However, the reference to Code of Practice article 49(1) was limited to a definition of actual and real possession and its differentiation from civil possession. It did not incorporate thereby the requirement of possession as owner. Note the emphasis by the court in the following quotation.
"... [a]ll parties concede that the possession upon which such mandatory injunction suit must be based is the same as that provided as essential for a possessory action under C.P. Art. 49(1), `[a] real and actual possession of the property at the instant when the disturbance occurred; a mere civil or legal possession is not sufficient.'" 113 So.2d 95, 100.
This emphasis indicates an attempt to define solely the concept of actual and real possession and does not thereby indicate an intention to incorporate the conjunctive requirement of possession as owner necessary to bring a possessory action. Supporting this statement, we note that the court followed the quotation by proceeding to determine whether or not the parties to the suit had fulfilled the requirements of what was referred to in the opinion as the requirement of C.P. Art. 298(5) of corporeal possession, without once mentioning a requirement of possession as owner.
The appearance of C.P. 49(1) and 298(5) in different parts of the old Code of Practice supports our conclusion that possession as owner was not required. Their relationship was only the tenuous one of referral for purposes of defining the concept *675 of "actual and real possession." The appearance of C.C.P. 3660 and 3663(2) in the same chapter should be accorded no more effect. The comments under 3660 and 3663(2) state that the articles make no change in the law.
Having decided that a lessee meets the requirement of possession under C.C.P. 3663(2), it remains to be decided whether a lessee is asserting, under lease, one of the three claims which he must assert under the article in order to obtain injunctive relief. According to the first cited quotation from Loeblich v. Garnier, supra, a plaintiff may obtain injunctive relief when he claims one of three different rights to immovable property. By way of emphasis, the opinion grouped two rights or claims together in a classification oriented toward ownership ownership itself and right of possession (possession satisfactory for purposes of a possessory action). The other claim which may be made does not relate to ownership at all and was so singled out by way of emphasisthe right of enjoyment.
Esmele v. Violet Trapping Co., 187 La. 728, 175 So. 471, 474 (1937) offers insight in defining a lessee's interest in property.
"Lease is a contract by which one party gives to another the enjoyment of a thing for a consideration ... A lessee who has been put in possession of a thing is, during the term of the lease, the proprietor of it. He has the legal right to use it. He is the quasi owner of it.
"... Plaintiff's (lessee's) petition shows that he was the proprietor of the land at the time the defendants trespassed upon it, and the Civil Code, art. 3415, says that the `proprietor' of a tract of land may forbid any person from entering it for the purpose of hunting thereon." (Emphasis and comment added.)
We find that a lessee has the requisite interest to seek injunction under C.C.P. 3663(2). Referring again to the Loeblich case, we find impressive support. It was stated at 113 So.2d 95, 100 that the lessee's remedy under C.P. Art. 298(5) is no different than that of the lessor. The court cited approvingly from Arkansas-Louisiana Gas Co. v. Parker Oil Co., Inc., 190 La. 957, 183 So. 229 (1938) at pages 231-232:
"One who is in physical possession (Note: not as owner) of a tract of land under a lease which gives him the exclusive right to possess it for lawful purposes may protect his possession against a trespasser by an injunction and may recover damages." (Emphasis and comment added.)
Although Arkansas-Louisiana Gas dealt with a mineral lessee, it was decided on January 10, 1938 some five months prior to the effective date of Act 205 of 1938 which classified mineral leases as a real right. Further the language in the Arkansas-Louisiana Gas case is of a general nature and citation of that language as authority in Loeblich (a case not dealing with mineral leases) prevents a limitation of its applicability to mineral lessees.
In Loeblich, the lessor had joined the lessee in the suit but in view of the Loeblich use of the above quotation, we do not find this indicative of a requirement of such joinder under C.C.P. 3663(2). This quotation by Loeblich from Arkansas-Louisiana Gas answers the argument that the failure in Loeblich to mention a requirement of possession as owner was due to the presence of the lessor in the suit. The quotation as made in Loeblich establishes the right of lessee to proceed alone.
Questions may be raised to the applicability of C.C.P. Art. 3663(2) to lessees because it limits this class to a right of action only after one year, whereas their right of enjoyment is perfected as of the date of the lease. However, the same seeming anomaly appeared under C.P. Art. 298(5) in relation to the servitude of passage which becomes perfected immediately upon creation by title. See D'Avy v. Briggs, 28 So.2d 366 (La.App. 1 Cir. 1947). We do not therefore *676 find this anomaly a bar to the applicability of 3663(2) to lessees.
Finding that plaintiff's petition stated a cause of action, we next consider whether the evidence supports the trial court's determination that trespass was proved. Defendants contend that they used only navigable streams and banks which they are allowed to use under LSA-C.C. Arts. 455, 457. The evidence supports a finding that defendants have used other parts of plaintiff's leased lands.
Defendants next contend that plaintiff did not establish that the boundaries of its 14,000 acre tract were marked, fenced or posted. It was established that about one-half the tract was fenced and that many posted signs were prominently displayed. The requirements to properly post land under the statute making trespass a crime (LSA-R.S. 14:63) were not met.
We are not concerned with a criminal trespass. The area where defendants trespassed was clearly signed as posted. The property was completely described in plaintiff's petition and plats showing plaintiff's property were attached both to the petition and to the trial court's judgment. In a suit for civil trespass and injunction, the only requirement is that the property in question be sufficiently described to be identifiable. In the cases of Rosenthal-Brown Fur Co. v. Jones-Frere Fur Co., 162 La. 403, 110 So. 630 (1926), Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936), and Louisiana Navigation Co. v. Oyster Commission, 125 La. 740, 51 So. 706 (1910), there was no suggestion that the land was posted. The land descriptions in those cases was comparable to the land description here.
The trial court properly enjoined defendants from trespassing on lands leased to plaintiff.
We have been convinced that the issue of the navigability of Dixie Canal and upper Bayou Fordoche was not properly before the trial court. The lessor-owner has not been joined as a party to these proceedings and the owner is an indispensable party to such determination. LSA-C.C.P. Art. 641. Warner v. Clarke, 232 So.2d 99 (La.App. 2 Cir. 1970). The nonjoinder of an indispensable party may be noticed by the appellate court, on its own motion. LSA-C.C.P. 927.
Defendants contend that the lessor owner is not an indispensable party because there is no claim affecting title to the beds of Bayou Fordoche. We find no merit to this contention. The landowner's interest in the subject matter is so interrelated and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless the owner is joined in the action. LSA-C.C.P. 641. Warner v. Clarke, supra, held that the establishment of a public right of servitude over the banks of a stream affected such a substantial impairment of the owners rights that the owner was an indispensable party. This defendant claims similar rights.
Defendant's reconventional demand for recognition of their claim to a 30 year acquisitive prescription of their campsite was not properly before the trial court for the same reasons. See also Martin Timber Co. v. Roy, 244 La. 1050, 156 So.2d 435 at 438 (1963); Bolden v. Brazile, 172 So.2d 304 at 310 (La.App. 4 Cir. 1965).
These determinations render moot defendants' reconventional demand for damages.
The trial court judgment permanently enjoining defendants from trespassing on plaintiff's described leased lands is affirmed. The denial of defendant's reconventional demand seeking to declare Dixie Canal a navigable stream is affirmed. The injunction granted to defendants relating to that part of Bayou Fordoche located north of Lake Fordoche is reversed and set aside. All costs of court both at trial and on appeal are assessed to defendants.
*677 All parties are granted the right to apply for a rehearing.
Affirmed in part: in part, reversed and rendered.[1]
DOMENGEAUX, J., concurs and assigns written reasons.
SAVOY, J., dissents for the reasons assigned in the original opinion.
DOMENGEAUX, Judge (concurring).
I concur in all results reached on this rehearing. I likewise concur in the reasons advanced in the majority opinion in all but one instance, that being the applicability of LSA-C.C.P. 3663(2) for the granting of injunctive relief to plaintiff to prevent defendants from trespassing on plaintiff's leased lands. It is my opinion that a predial lessee, such as plaintiff, may not, in a case such as this, demand an injunction under the provisions of C.C.P. 3663. Rather, I conclude that plaintiff is entitled to its injunction under the provisions of C.C.P. 3601.
Article 3660 provides that within the intendment of the articles of "this chapter"[1] a person is in possession when he possesses for himself, as owner. A predial lessee does not possess for himself. He possesses for his lessor. In Article 3656, which provides that a plaintiff in a possesory action must possess for himself, it is written that a predial lessee possesses for his lessor and not for himself.
A predial lessee, as distinguished from a mineral lessee, does not have a real right. His right is a personal one. (By legislation, Act 205 of 1938, R.S. 9:1105, mineral leases are classified as real rights.) See Yiannopoulos, Civil Law of Property § 95; Wolfe v. North Shreveport Development Company, La.App., 228 So.2d 148, writ refused 255 La. 159, 229 So.2d 736; Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114.
Article 3663(2) applies to "A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment." (Emphasis added.) A predial lessee does *678 not claim the ownership, possession, or enjoyment of a real right; he possesses for a lessor and he has the enjoyment of a personal right, namely, that of the lease.
The majority cites the case of Esmele v. Violet Trapping Co. for the purpose of offering an insight into the definition of a lessee's interest in property. True, Esmele stated that the lessee had the use and enjoyment of the property, but the language, for the purposes used in the majority opinion, is taken out of context in that in Esmele the plaintiff lessee merely brought an action for damages, as he was entitled to do under Article 2703 of the Civil Code.
In Loeblich v. Garnier, also cited in the majority opinion, and which, as Esmele, was decided under the old Code of Practice, the suit was one for damages for disturbance of possession. It merely included an ancillary demand for injunctive relief. Therein, the action was brought jointly by the lessor and the lessee, and one of the issues considered by the court was whether a lessee may bring an action for injunction. In this respect, the court indicated that a lessee who has possessed for a year adversely to the owner may bring an action for injunction against the owner. This would be true today under Article 3663. If the lessee has possessed adversely to the owner for a year, he may claim relief under this article against anyone, including his lessor.
I conclude, therefore, that the plaintiff lessee, acting alone, may not bring an action for injunction in a case such as this, under CCP Article 3663.
In concluding that plaintiff lessee is entitled to an injunction under CCP Article 3601, it is to be remembered that plaintiff's suit was for a permanent injunction only, without a request for either a temporary restraining order or a preliminary injunction, and that the case was tried on the merits.
CCP Article 3601 provides as follows:
An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; provided, however, that no court shall have jurisdiction to issue, or cause to be issued, any temporary restraining order, preliminary injunction, or permanent injunction against any state department, board or agency, or any officer, administrator or head thereof, or any officer of the State of Louisiana in any suit involving the expenditure of public funds under any statute or law of this state to compel the expenditure of state funds when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.
During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
Except as otherwise provided by law, an application for injunctive relief shall be by petition.
Nothing in that Article requires an allegation of irreparable injury, loss, or damage to be in the petition. Only CCP Article 3603, which deals with the extremely harsh remedy of a temporary restraining order, issued without a hearing, connects the irreparable injury, etc., requirement with the petition. Even that Article, however, makes no mention of the need to allege irreparable injury, but merely commands that the petition or a supporting affidavit must show specific facts from which it clearly appears, "... that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had." I submit that a petition for permanent injunction, without request for a temporary restraining *679 order or preliminary injunction, need not have specific allegations of irreparable injury so long as the evidence at the trial on the merits shows such irreparable injury, loss or damage. O'Beirne v. Police Jury of Red River Parish, 153 La. 357, 95 So. 862; Williams v. Douglass, 21 La.Ann. 468.
In the writer's concurring opinion to the original opinion herein it was indicated that plaintiff's petition did not allege facts which showed irreparable injury and for that reason it should be dismissed. It is my belief now, that the continuous acts of trespass on plaintiff's leased lands by defendant, and the taking of game thereon, all of which is supported by the record, are such acts as can be enjoined under CCP Article 3601 because these acts constitute injuries for which an equally adequate remedy is not available on the law side of the court.
In West v. Winnsboro, 252 La. 605, 211 So.2d 665, our Supreme Court stated an injunction to be an equitable remedy available to a plaintiff, under CCP Article 3601, who is without an adequate remedy at law. The court went on to define "adequate remedy at law" in the following terms:
By adequate remedy at law is meant one which is as speedy, efficient, and complete as the remedy in equity. See Banjavich v. Louisiana Licens. Bd. For Marine Divers, supra [237 La. 467, 111 So.2d 505]; de Funiak, Handbook of Modern Equity § 5, pp. 9-10 (2d ed. 1956); McClintock on Equity § 43, p. 103 (2d ed. 1948); 27 Am.Jur.2d, Equity, § 94, pp. 616-617; and 28 Am.Jur., Injunctions, § 39, pp. 534-535.
The test is correctly stated in 28 Am. Jur., Injunctions, § 39, p. 534, as follows:
"It is not enough that there is a remedy at law. The remedy, to preclude injunction, must be certain and reasonably prompt, and as practicable and efficient to the ends of justice and its administration, both in respect of the final relief and the mode of obtaining it, as an injunction would be."
In the case at bar the relative inadequacy of any relief other than an injunction is indisputable. Indeed, any other judgment would not only approach uselessness, but would be violative of the laudable principle of judicial economy, as it would require plaintiff to return to court for a trial on the merits each time that the defendant committed a trespass. Especially when one considers the difficulty of measuring the quantum of damages which plaintiff could properly recover, and the probable diminutiveness thereof, the futility of such relief becomes evident. Considering the above quoted language from the West v. Winnsboro case, therefore, plaintiff is without an "adequate" remedy at law, and is entitled to injunctive relief. La.C.C. Article 21; La. CCP Article 3601.
With the foregoing explanation, I concur in our judgment on rehearing.
NOTES
[1] The concurring opinion which follows suggests three areas for clarification.

Concerning the applicability of LSA-C.C.P. 3663(2), I do not rest my position on the finding that a lessee possesses a real right. The reference in the concurring opinion to "real right" in 3663(2) is not responsive.
The concurring opinion states that the language of Esmele v. Violet Trapping Co. is taken out of context "for the purpose" of the opinion. The "purpose" of the citation is to show that a lessee, by virtue of his lease, has the enjoyment of immovable property. That is precisely what the Supreme Court held in Esmele. I submit that "the enjoyment" "of immovable property" suffices to bring an action under 3663(2). Citation of Esmele for authority that a lessee possesses such a right is not out of context because possession of this right allowed the lessee in Esmele to bring another action. The statement regarding a lessee's right in Esmele was of a general and pervasive nature and was not limited to possession of this right of enjoyment only when he decided to sue for damages.
Lastly, the analysis of Loeblich v. Garnier may be misleading. After admitting that one of the issues before the court was whether a lessee might bring an injunction, the concurring opinion states that "in this respect" the court indicated that a lessee could bring such an action even as to the owner if the lessee possessed adversely to the owner for one year. By way of the words "in this respect", the concurring opinion seems to infer that the discussion of a lessee's rights under 298(5) is limited to the situation where he may bring such an action against the owner based on one year adverse possession. If that is the reasoning, I differ. A reading of the case will reveal that the discussion in the case most definitely included the areas brought out in my opinion and was not restricted to a discussion of actions that the lessee could bring against the owner.
I hold to the views expressed in this opinion.
[1] Chapter One, Title II, Code of Civil Procedure, covering Articles 3651 through 3664.