651 So.2d 907 (1995)
L.A. WEST
v.
EAST TOWN & COUNTRY DRAINAGE DISTRICT, et al.
No. 26,538-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
C. Lynn Tubb, Monroe, for appellant.
Theus, Grisham, Davis & Leigh by Ronald L. Davis, Jr., George M. Snellings, IV, Monroe, for appellee.
Before SEXTON, LINDSAY and WILLIAMS, JJ.
SEXTON, Judge.
Plaintiff, L.A. West, sued to collect payment on a promissory note for $32,500.00 plus 10 percent interest and 25 percent attorney fees. The note was given to him by defendant, East Town & Country Drainage District ("District"), as consideration for a levee built by the District on the plaintiff's *908 property pursuant to a defunct servitude grant. The note was signed by the president of the District board, James W. "Biggie" Moore, and the board's secretary, B.R. Franklin, who were also named as defendants. The claims against Moore and Franklin were later dismissed. The trial court rendered judgment in favor of plaintiff, but reduced the debt to $8,100.00, after finding that the actual land taken for the levee was only .32 acres rather than the 1.37 acres claimed by the plaintiff, and after finding that the $32,500.00 amount of the note was based on a purchase price of $25,000 per acre. The judgment was further offset by liens amounting to $2,753.46. The court assessed the defendants with 25 percent attorney fees on any principal and interest that remained due to plaintiff after the offset. Both parties appeal.
The drainage district was made up of homeowners in Town & Country Subdivision which experienced flooding problems on property along a ditch owned by plaintiff. The District board could be characterized as a loose-knit group of homeowners involved in solving the flooding and drainage problems of the subdivision, often holding meetings in their backyards. Biggie Moore was president of the District for some 14 or 15 years. He worked closely with West, who apparently performed most of the initial drainage and levee work at his own expense because the District had no initial funds. The plaintiff, L.A. West, had a long, friendly relationship with the District. From the record, it appears that West would generally accept a promissory note from the District in exchange for work or property and take payment for the notes whenever the board had the money. Biggie Moore testified that a relationship of trust developed between the board and West because West had done so much for the District.
In 1973 or 1974, it was decided that a levee needed to be built along the ditch adjacent to the subdivision. West granted the District a servitude to build the levee, but attached a letter to the grant stating that his signature granting the servitude would be null and void if the levee exceeded 73 feet Mean Sea Level (MSL). West believed that a levee over 73 feet MSL would be a waste of taxpayer's money. The amount of land involved in the initial servitude was 1.37 acres. Part of the levee was built in 1974. The part of the levee involved in this dispute was built in 1983-84.
Conflicting testimony indicates that the levee exceeded 73 feet in a few places, either by amended design by the board or because there was excess dirt available at no cost. It is not entirely clear from the record whether the portions that exceeded the 73 feet involve the servitude in question. The District contends that the part of the levee that was built on the 1974 servitude was not built until late 1983 or 1984, and that a joint exhibit submitted in the record shows that the levee does not exceed 73 feet. Testimony was adduced from Asa Ray, a civil engineer, regarding the height of the levee. Mr. Ray was apparently involved in the construction of some portions of the levee in 1974. He testified that the levee exceeded 73 feet in some places due to excess dirt. The district contends that Mr. Ray was not involved in the 1983-84 levee construction involving the land in this dispute and that his testimony concerns a different part of the levee built in 1974.
A little more than ten years after the 1974 servitude grant, West demanded that the district pay him for the land on which the levee was built, claiming that the servitude was no good because the elevation of the levee was greater than 73 feet. The District initially tried to appease West by cancelling some $2,753.46 in liens, but thereafter, on April 24, 1986, District board members Moore and Franklin signed a note presented to them by West. The amount of the note was $32,500.00. This figure was based upon 1.37 acres at a price of $25,000.00 per acre. The acreage was the same acreage involved in the expired 1974 servitude, however, there was never any deed given or a recordation of the new servitude. The per acre price was allegedly the same price West received for the adjacent property.
The District asserts that they received no consideration for the note and that West did not personally own the property. Previously, on February 9, 1983, West conveyed the property in question to Twin City Machinery, *909 Inc., a Louisiana corporation owned by West. The corporate name was changed to Twin City Investments of Monroe, Inc. on September 30, 1985. Further, there is recorded a dissolution deed from Twin City Investments of Monroe, Inc. to Twin City Investments of Monroe Partnership ("Twin City"), dated July 1, 1985, conveying the property to the partnership. It also appears that some of the tracts burdened by the servitude were sold by Twin City to third parties after West accepted the promissory note for the property without reserving the servitude (for which there is no deed or recordation) allegedly granted to defendant.
The trial court found that the original 1974 servitude became void because of the 73-foot MSL violation of the levee built in 1974 or 1975. It further found that the elements of a sale (thing, price and consent) were present when the District executed the promissory note in favor of West, so there was a sale of a new servitude. The court stated that the District was entitled to a diminution in the value of the servitude because West could not deliver the portions of the servitude that had been sold to third parties. Finally, the court found that the sale price was $25,000.00 per acre and instructed the parties to determine the actual amount of land acquired under the new servitude. The judgment stated that there was .32 acres of West's land burdened by the servitude and re-valued the sale at $8,100. The court offset this amount by the $2,753.46 in liens and any other liens of record. It awarded 10 percent interest and 25 percent attorney fees on the remaining balance.
Defendant contends that the trial court erred on several grounds. First, it contends that the trial court erred in finding that consideration was given by Mr. West for the execution of the $32,500.00 note by East Town & Country Drainage District. Second, defendant contends the trial court erred in finding that the levee built on the 1974 servitude exceeded 73 feet MSL, thereby extinguishing the servitude. It claims the court should not have given weight to Asa Ray's testimony because the levee was not constructed until 1984-85 and Ray was an engineer for the project only back in 1974. It claims Ray was testifying about the wrong tract. Third, defendant contends that the trial court erred in finding that Mr. West was acting as agent for Twin City, the owner of the property. Finally, defendant alleges the trial court erred in not finding that a plat of the Town & Country Subdivision Unit No. 28, dated September 30, 1977, created a servitude of drain that would allow the district to construct a levee and thereby reduce any calculation of the property allegedly owned by Twin City and burdened by the levee if the 1974 servitude is deemed invalid.
West also appealed, asserting that the court erred in reducing the value of the promissory note. He contends that the note is an unconditional promise to pay the $32,500.00 and West is a holder in due course. West further argues that the District knew what they were getting when they executed the note and should not be heard now to argue failure of consideration. West claims that the District received 1.3 acres for the note; they simply did not use all of it for the levee. Therefore, he contends that the trial court erred in finding that only .32 acres were sold. Finally, West argues that the court erred in offsetting the liens to the amount due under the note. He contends that the liens had prescribed under LSA-R.S. 47:2111.
A threshold issue in this case is whether the trial court was correct in proceeding toward resolution of this dispute without joining Twin City as a party. Twin City is the record owner of the property burdened with the levee. Although the promissory note sued upon by the plaintiff was issued to L.A. West personally, Mr. West contends that the value given for the note is the property owned by the Twin City partnership. This, therefore, raises the question of whether Twin City is an indispensable party to the action.
In Louisiana, a partnership is a juridical person, distinct from its partners. LSA-C.C. Art. 2801. A partnership is the proper party to maintain an action regarding partnership property. Dalby v. United States Fidelity & Guaranty Co., 365 So.2d 568 (La.App. 1st Cir.1978). In Dalby, the court upheld the ruling of the trial court *910 sustaining the defendant's exception of no right of action to the claim of a partner who brought a suit individually in his own name for damages to partnership property.
The instant case is somewhat different in that this is a suit to enforce the promissory note issued to Mr. West personally. Nonetheless, defendant contends that there was no consideration given for the note, and Mr. West contends the servitude property was the value given. This property is not owned by Mr. West, but by the Twin City partnership.
An indispensable party is one whose interests in the subject matter of the litigation is so interrelated that complete adjudication of the controversy cannot be made unless he his joined in the action. LSA-C.C.P. Art. 641; Smith v. State, Through Department of Public Safety, 620 So.2d 1172 (La. App. 1st Cir.1992). In Warner v. Clarke, 232 So.2d 99 (La.App. 2d Cir.1970), writ denied, 255 La. 918, 233 So.2d 565 (1970), we held that a declaratory judgment involving private lands subject to a servitude in favor of plaintiffs could not be rendered because of the absence of indispensable parties, namely, the owners of the land involved in the dispute.
The non-joinder of an indispensable party may be noticed by the appellate court on its own motion. LSA-C.C.P. Art. 927; Warner v. Clarke, supra. In this case, we conclude, we cannot properly decide whether the lands in question are burdened by a levee servitude, and whether this servitude is the value given for the promissory note issued to the plaintiff, unless the owner of the land is a party to this litigation.
Accordingly, the judgment of the trial court is annulled and set aside. We remand the case to the trial court for further proceedings in accordance with this opinion. Costs to await final disposition.
JUDGMENT ANNULLED; REMANDED.